### COMMONWEALTH *vs.* ALONZO B. WENTWORTH & others.

Norfolk.  June 28. — Sept. 7, 1887.  GARDNER, J., absent.

A warrant for a town meeting contained an article "to see if the town will choose the selectmen surveyors of highways," and an article " to choose all necessary town officers," naming those who were to be chosen by ballot, including selectmen, assessors, and overseers of the poor, and ·adding " all of said votes to bo on one ballot." *Held*, that the town might vote to " choose the selectmen surveyors of highways," and " to proceed to ballot for five selectmen who shall also be assessors, overseers of the poor, and highway surveyors." *Held, also,* that ballots subsequently cast for separate boards of selectmen, assessors, overseers, and surveyors could be rejected except so far as they contained the names of persons voted for as selectmen ; and that they were to be counted for such persons.

INFORMATION, in the nature of a *quo warranto*, filed March 12, 1887, by the Attorney General, at the request and upon the

relation of certain residents, voters, and taxpayers of Dedham, alleging that the defendants were usurping the offices of selectmen, assessors, overseers of the poor, and surveyors of highways in said Dedham, which offices they assumed to hold by virtue of an election at the annual town meeting on March 7, 1887. The case was submitted to the judgment of this court upon an agreed statement of facts, the material parts of which appear in the opinion.

*W. Gaston & C. L. B. Whitney*, for the Commonwealth.

*A. B. Wentworth*, for the defendants.

DEVENS, J. The contention of the relators is, that it was not within the power of the town to vote that there should be elected only selectmen who should be, or should act, as assessors, overseers of the poor, and surveyors of highways; and further, if the town might do so under a proper warrant for the meeting, it could not do so under the warrant as framed.

There, was a distinct article in the warrant "to see if the town will choose the selectmen surveyors of highways," under which the town voted to "choose the selectmen surveyors of highways." There is nothing incompatible in these offices; surveyors of highways are not required by law to be chosen by ballot; the duties of such officers may properly be performed by the selectmen; and the warrant fully brought to the attention of the town the question whether such duties should be imposed on the selectmen. We do not understand the relators to insist that this might not properly have been done, but they especially urge that it was not in the power of the town by vote to prevent the inhabitants from voting for distinct boards as assessors of taxes and overseers of the poor. Assuming for the moment the sufficiency of the warrant in this respect, it was, we think, competent for the town to determine that the selectmen should be assessors and overseers. The town officers who shall be chosen, their number, and the duties they shall perform, are left to a certain extent to the vote of the town. Before any ballot could be proceeded with, it was necessary to determine by vote how many selectmen (whether three, five, seven, or nine) should be chosen; and, if the town intended to choose distinct boards as assessors or overseers, the number who should constitute these boards was to be first determined. These preliminary questions

were necessarily to be decided by those who were present when
the meeting was organized, and ready to proceed with the busi-
ness of the town.  Those voters who subsequently arrived had
necessarily to conform to every lawful vote thus taken as to the
order or manner of the election, or the officers or number of them
to be chosen.  The vote of the town was " to proceed to ballot for
five selectmen, who shall also be assessors, overseers of the poor,
and highway surveyors," an amendment which was proposed to
ballot for distinct boards being first rejected.  The contention
of the relators, that it was the right of such voters as so desired
thereafter to vote for distinct boards, cannot be maintained.
There is no statutory requirement that distinct boards of asses-
sors and overseers shall be chosen, and the language of the vote
passed followed closely the language of the statute, which pro-
vides that " the selectmen shall be assessors of taxes and over-
seers of the poor in towns where other persons are not specially
chosen to those offices."  Pub. Sts. c. 27, § 101.

   The relators, however, contend that, if this vote could properly
have been passed under a sufficient article in the warrant, the
terms of the article did not authorize any such vote.  While a
town is limited in the transaction of business by the articles in
the warrant, yet a liberal construction has always been given to
their language, so as to include all that is properly, even if inci-
dentally, embraced in the subject to which they relate.  " The
articles inserted in warrants for calling town meetings," says
Mr. Justice Hubbard, " presenting the various subjects for the
consideration of the inhabitants, are from the very nature of the
case general in their description, and are oftentimes inartificial
in their construction.  They are the mere abstracts or heads of
the propositions which are to be laid before the inhabitants for
their action ; and matters incidental to and connected with such
propositions are alike proper for their consideration and action."
*Haven* v. *Lowell*, 5 Met. 35, 40.  It is not necessary that the
warrant for a town meeting shall specifically state that the
inhabitants will be called to act on the question of granting
money for a particular purpose, in order to render a grant
valid, if the subject to be acted on is distinctly stated, and is
one which will be likely to require a grant of money.  *Black-
burn* v. *Walpole*, 9 Pick. 97.  An article in a warrant to see if

a town will appropriate money to a particular object, authorizes a vote to raise, as well as to appropriate it. *Torrey* v. *Millbury*, 21 Pick. 64.

The article in the case at bar was "to choose all necessary town officers." It then names those which are to be chosen by ballot, including seléctmen, assessors, and overseers of the poor, states the length of the respective terms, and adds, "all of said votes to be on one ballot." This was sufficient to authorize the town to determine the number of officers to be chosen, and the duties to be imposed on them, so far as it might lawfully do so, and to deal with the whole subject of their election in any appropriate manner. Where a warrant for the annual town meeting, held by law for the purpose of choosing officers, contained articles "to choose all necessary town officers" and "to choose all necessary committees," and the statute allowed of two modes of choosing committees, it was held that under these articles the town was authorized to determine which mode should be pursued, and to pass a vote that each school district choose its own committee, this being one of the modes provided by statute. *Williams* v. *Lunenburg School District*, 21 Pick. 75. *Kingsbury* v. *Quincy School District*, 12 Met. 99. An article in a warrant for an annual town meeting "to elect all necessary town officers for the ensuing year," and an article "to raise and appropriate such sums of money as may be necessary to defray town charges for the coming year, and pay any indebtedness of the town," are sufficient, under the Gen. Sts. *c.* 18, § 22, to authorize the town to vote at the meeting, in conformity with the Gen. Sts. *c.* 18, § 73, to invest the collector of taxes thus duly chosen with all the powers which a town treasurer has when appointed collector of taxes. "The subject of choosing officers includes," says Chief Justice Chapman, "as an incident, any special authority that the town is authorized by statute to confer upon them in the exercise of their official duties." *Sherman* v. *Torrey*, 99 Mass. 472.

Indirectly the town could determine that the persons chosen selectmen should also be assessors and overseers, by choosing selectmen only, and leaving them to become assessors and overseers by the operation of the statute. There is no apparent reason why this might not also be done by a direct vote, which,

in determining the number of the selectmen, also provided that they should be assessors and overseers.

The article in the warrant was sufficient, and, when we examine the facts, appears to have been fully understood by the voters of the town. Whether there should be a single board of selectmen only, or whether the other boards also should be chosen, was discussed at the caucuses held previously to the election; "an unusually large number were present" when the vote on this matter was taken at the beginning of the town meeting, and before the balloting; and there was no objection to or protest against the vote, until just before the closing of the polls.

There remains the question whether, in counting the votes, all those ballots should have been rejected which, in addition to those persons named as voted for as selectmen, contained also the names of the same, or some of the same persons, or other persons, as assessors, overseers, and surveyors. The declaration of the moderator that any ballots which contained more than five names should be rejected, could not enlarge the vote of the town, the meaning of which was, that selectmen only should be voted for, who should be *ex officio* assessors, etc. Ballots containing the names of certain persons as selectmen, and certain as assessors, etc., were irregular under this vote, but there was no difficulty in ascertaining for whom the voter intended to vote as selectmen. The same difficulty is not presented as that which would be found if a voter should vote for seven selectmen, when only five were to be elected. The ballots in the case at bar, cast by these voters for selectmen, were readily distinguishable from the other portion of the ballot; the voters had a right to give them for the selectmen, upon whom the town had imposed the duties of the other offices; and there does not appear to have been any fraudulent purpose in placing names for the other offices on the ballot, nor by so doing was any serious embarrassment occasioned. There is no difficulty in rejecting as surplusage all that portion of these ballots which relates to the boards of assessors, &c., as selectmen only were to be voted for.

It may be said that those votes for selectmen should be rejected where other names were on the ballot, because, by voting

for different persons to constitute distinct boards of assessors, &c., the voter depositing it indicated clearly an intention not to vote for selectmen who should have the powers of the other boards of officers. But the ballot must be construed in conformity with the vote of the town. While the voter sought by such a ballot to assert his right to vote for distinct boards, it must be held, if he could not rightfully do this, that, in voting for selectmen, he had voted for them with such powers as the town had by vote conferred upon them.

It will not be necessary to consider the various classes of these ballots. It is not in dispute that, if all the votes for selectmen are counted, including those upon ballots where there are also votes for assessors, &c., the relator Murray would be elected, and not the defendant Wentworth. The result, therefore, is, that Murray was duly elected to the office of selectman, and, on taking the necessary qualifying oaths, should be admitted to exercise it in connection with the other lawfully chosen selectmen; and that there should be a judgment of ouster against Wentworth. *Strong, petitioner,* 20 Pick. 484. *Conlin* v. *Aldrich,* 98 Mass. 557.                    *Judgment of ouster accordingly.*

## MEMORANDUM.

ON the seventh day of September, 1887, the Honorable WILLIAM SEWALL GARDNER resigned the office of justice of this court, which he had held since the thirteenth day of October, 1885.