ORLANDO R. SMITH *et al. vs.* TOWN OF WESTERLY *et als.*

LOUIS W. ARNOLD *et ux. vs.* WALTER PRICE *et als.*

Neither a town nor a town council has power to grant an exclusive right to lay and maintain water pipes in the public highways of the town unless such power is conferred by the legislature in express terms or by necessary implication.

Pub. Laws R. I. cap. 425, § 1, May 2, 1884, provides that "The town council of any town, or the city council of any city, may grant to any person or corporation the right to lay water pipes in any of the public highways of such town or city for the supplying the inhabitants of such town or city with water; and may consent to the erection, construction and the right to maintain a reservoir or reservoirs within said town or city, for such time and upon such terms and conditions as they may deem proper, including therein the power and authority to exempt such pipes and reservoirs, and the land and works connected therewith, from taxation."

*Held*, that where a town council, in a contract made with a water company for supplying the town with water, granted to the company " the exclusive right to use the public highways and public grounds " of the town for the purpose of laying and maintaining water pipes therein for the period of twenty-five years, the town council exceeded the authority conferred upon it by the statute, and that the town was not bound by the contract.

*Held*, further, that the contract being one which the town itself had no power to make, the town could not validate it by any act of ratification.

*Held*, further, that the town was not estopped from taking advantage of the invalidity of the contract, although the water works company had in good faith performed its part of the contract, since the company was bound to know the extent of the authority of the town council and of the town in making the contract.

Pub. Laws R. I. cap. 285, of March 30, 1882, authorizes towns to construct water works of their own.

A warrant for a town meeting contained a notice that one of the objects of the meeting was " to hear and consider the report of the arbitrator selected on behalf of the town, as to progress in matter of determining value of the W. Water Works, and to take such further action as the town shall see fit with reference to the purchase of said water works, and also to consider the question

of advisability of constructing, maintaining and operating new water works by the town." On a previous occasion the town had taken action with a view to purchasing the water works of the W. Water Works Co.

*Held*, that the notice in the warrant complied with the requirement of Pub. Stat. R. I. cap. 35, §§ 8, 12, and authorized the town to pass a vote directing the town council to contract for and construct water works for the town.

BILLS IN EQUITY for injunction.    On demurrer.

The contract referred to in the opinion of the court was a resolution of the town council of Westerly, passed June 29, 1885, accepting a proposition made by James M. Pendleton and others to construct water works for supplying the inhabitants of Westerly and the adjacent territory with water. So much of the resolution as is material to the present case is as follows :

"*It is Voted and Resolved*, That the said proposition is hereby accepted, and that the right to use the public highways and public grounds of this town for the purpose of laying water pipes, and continuing the same therein, for supplying the said inhabitants with water for fire, domestic, and other purposes, and of using said highways and grounds for the purpose of making the necessary alterations and repairs in said pipes, be, and the same hereby is, granted to James M. Pendleton, . . . . . their heirs, executors, administrators and assigns, hereinafter called the Westerly Water Works Company, (under which name they propose to procure an act of incorporation under the laws of this State,) the same to be freely and fully enjoyed so long as the said inhabitants shall be reasonably supplied with water thereby.

And, as appurtenant to this grant, this town council hereby consents that said Westerly Water Works Company erect and construct, with the right to maintain, one or more reservoirs within this town, to connect with said pipes for such supply of water ; and that the exclusive right to use the public highways and public grounds of this town for the purpose aforesaid, be, and is hereby, granted to the said Westerly Water Works Company, their heirs, executors, administrators, and assigns, for and during the period of twenty-five years from this day ; subject, however, to whatever rights or

privileges are now possessed or enjoyed by any party or parties who have pipes already laid and in operation."

*Providence, February* 26, 1896.    TILLINGHAST, J.    These cases have been tried together, and we will consider them in the same way.

The Smith case is brought by certain taxpayers of the town of Westerly, in behalf of themselves and all others similarly situated, against the town of Westerly, the members of the town council, members of the committee on water works and the town treasurer, and seeks to enjoin them from proceeding further with the erection of water works or the purchase of land therefor, and from expending any money or incurring any obligations whatever in respect thereof, and for other relief.

The Arnold case is brought by taxpayers and owners of land abutting on one of the public streets of Westerly, in behalf of themselves and others similarly situated, against the members of the town council, and seeks to enjoin the respondents and their successors in office, together with their agents and servants, from constructing water works or opening streets of the town, and in particular the street on which the complainants' lands abut, for the purpose of laying water pipes therein, without the consent of the Westerly Water Works, prior to the expiration of the term of years under which it is claimed said corporation has exclusive rights in the streets of said town.

The complainants in the Smith case substantially set up in their bill, (1) That at a town meeting holden in Westerly, on the 11th day of April, 1895, it was voted to build water works for said town ; (2) that the town council of Westerly, in pursuance of said vote, has authorized its committee on water works to expend the sum of $1,749 in purchasing certain lands to be used in the construction of water works ; (3) that the action of the town and town council in the premises was without legislative authority ; (4) that notwithstanding such want of authority, the said town council is proceeding to purchase lands without the State, and threatens to spend large sums of money in building water works, by rea-

son of which a burden will be placed upon the complainants and other taxpayers ; (5) that the Westerly Water Works, a private corporation, is and for a long time has been furnishing to the citizens of Westerly an abundant supply of pure water at a reasonable cost, and from which the necessary supply for public use can at all times be procured ; (6) that the building of new water works is unnecessary, and would impose an unjust burden upon the complainants and other taxpayers ; (7) that the Westerly Water Works has the exclusive right, under a contract with said town, to use the public highways for the purpose of laying water pipes and continuing the same therein during a specified period not yet expired, with the terms of which contract said Westerly Water Works has complied ; (8) that whenever said town shall proceed to construct new water works, the said Westerly Water Works will have the right to enjoin it from so doing ; (9) that the complainants believe that said Westerly Water Works intends to so enjoin said town ; (10) that in case said town should be so enjoined, all sums of money expended by it as aforesaid would be wholly lost ; (11) that the Westerly Water Works obtains its supply from a certain brook in North Stonington, Conn., through contracts made with and privileges obtained from parties having the right to and controlling the stream ; (12) that the land which the town is proceeding to purchase is only available in obtaining a supply of water from the same brook or stream from which the Westerly Water Works obtains its supply ; (13) that no contract or arrangement has been made by said town with the parties controlling said stream to take water therefrom ; (14) that the complainants are informed and believe that no such contract or arrangement can be made, and that any expenditure of money for land in such locality would be wholly lost ; and (15) that the notice to the taxpayers calling the town meeting of April 11, 1895, did not state that any proposition to expend money was to be voted upon at said meeting, but that notwithstanding this fact the expenditure of $150,000 was authorized.

The complainants in the Arnold bill set up substantially

the same facts, together with the charter of the Westerly Water Works, and seek the same general relief.

To the Smith bill the respondents, the town of Westerly and William Hoxsey, have demurred, and the other respondents have answered ; and to the Arnold bill the respondents have demurred. Several grounds of demurrer are alleged, but principally to the effect that it does not appear from said bills or either of them, that the Westerly Water Works has the exclusive right to use the public highways of said town for the purpose of laying and maintaining water pipes, etc. ; that, so far as appears from the allegations set up, the town of Westerly has the right to erect water works and purchase land therefor, and also that it appears by said allegations that the vote of the town, passed April 11, 1895, was authorized and legal.

The principal questions raised by the pleadings are : (1) Does the contract entered into between the town council of Westerly and the Westerly Water Works Company confer upon the Westerly Water Works the exclusive right to use the public highways and grounds in said town for the laying and maintaining of water pipes for the purposes aforesaid ? (2) Has the town of Westerly the right to construct water works of its own ? and (3) If it has such right, does the vote of the town, passed April 11, 1895, authorize the construction of such water works ?

Before proceeding to answer the first of these questions, it is proper to state that, it appearing to the court that the questions involved could not be determined without passing on the rights of the Westerly Water Works, and it also appearing that said Westerly Water Works was interested in said questions but was not a party to said bills or either of them, said corporation was, by order of the court, notified to intervene in said suits if it desired to be heard. Said corporation, however, has not seen fit to become a party to either of said bills, and has informed us through its counsel that it does not desire to do so.

As to said first question then. The contract which was made with James M. Pendleton and others, who styled

themselves the Westerly Water Works Company, and who subsequently obtained a charter and organized thereunder as the Westerly Water Works, we will treat, for the purposes of this decision, as having been made with said corporation. The only authority to make said contract on the part of the town council is conferred by Pub. Laws R. I. cap. 425, § 1, of May 2, 1884, which provides as follows : "The town council of any town, or the city council of any city, may grant to any person or corporation the right to lay water pipes in any of the public highways of such town or city, for the supplying the inhabitants of such town or city with water; and may consent to the erection, construction and the right to maintain a reservoir or reservoirs within said town or city, for such time and upon such terms and conditions as they may deem proper, including therein the power and authority to exempt such pipes and reservoirs, and the land and works connected therewith, from taxation." It will be seen at once that, in attempting to grant to said company the *exclusive* right to lay water pipes in the public highways of the said town, the town council exceeded the authority conferred by said statute, and hence that the town is not bound by said contract. For, however it may be as respects the power of the legislature to make such a grant exclusive, it is clear that no such power can be exercised by a town council unless it is conferred by express words or by necessary implication. In other words, when a franchise like the one here set up in favor of a corporation is drawn in question, and is claimed to have been obtained by virtue of a contract of this sort, the power of the town council to enter into such a contract must be free from doubt ; or, as said by the court in *State* v. *Cincinnati Gaslight & Coke Co.*, 18 Ohio St., 262, 293, "It must be found on the statute book, in express terms, or arise from the terms of the statute by implication so direct and necessary as to render it equally clear." See 2 Dillon, Municip. Corp. 4th ed, § 695, and cases cited ; *Citizens' Gas & Mining Co.* v. *Elwood*, 114 Ind. 332 ; *Syracuse Water Company* v. *Syracuse*, 116 N. Y. 167, 180 ; *Norwich Gas Light Co.* v. *Norwich City Gas Co.*, 25 Conn.

19, 31 ; *Saginaw Gas Light Co.* v. *Saginaw,* 28 Fed. Rep. 529, 534, 538 ; *Grand Rapids Electric Light & Power Co.* v. *Grand Rapids Edison Electric Light & Fuel Gas Co.,* 33 Fed. Rep. 659 *et seq.*; *Birmingham & Pratt Mines Street Ry. Co.* v. *Birmingham Street Ry. Co.,* 79 Ala. 465, 473 ; *Paine* v. *Spratley,* 5 Kan. 525 ; Sedgwick, Stat. Law, 2d ed. 291–296, and cases cited ; *Farnsworth* v. *Pawtucket,* 13 R. I. 82 ; *Mathewson* v. *Hawkins,* Index QQ., 15, 18, 19. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public. Sutherland, Statutory Construction, § 380, and cases cited. The statute above quoted simply authorized the respondent town council to grant the right to lay water pipes in the public highways of said town for the purposes and under the limitations and exemptions specified, but did not authorize them to go beyond its terms and grant the *exclusive* right so to do.   This would be to enlarge and very materially alter said statute, instead of construing it as the law requires in regard to acts like this, which tend to establish monopolies or confer exceptional exemptions and privileges, correlatively trenching on general rights.   Endlich, Interpretation of Statutes, § 349, and cases cited.   Thus, in the case of *Wright* v. *Nagle,* 101 U. S. 791, it was held that legislative power given to an inferior body to establish ferries and bridges did not authorize such body to grant the exclusive right therefor to one person ;   that every statute which takes away from the legislature its power will always be construed most strongly in favor of the State.   In *State* v. *Cincinnati Gaslight & Coke Co., supra,* in which the question now before us was very exhaustively and learnedly considered, the charter conferred on said company power " to manufacture and sell gas, to lay pipes," etc., provided the consent of the city council be obtained for that purpose.   Under the power given to the city council of Cincinnati " to cause said city or any part thereof to be lighted with oil or gas," and to levy a tax for that purpose, it contracted to invest the defendant with the full and exclusive privilege of using the streets, etc., for the purpose of lighting the city for the term

of twenty-five years, and thereafter until the city should purchase the works. It was held that, while there was no doubt that the city might by contract provide for the lighting thereof by gas, yet it had no authority to grant the exclusive right so to do to the respondent. In *Jackson County Horse Railroad Co.* v. *Interstate Rapid Transit Ry. Co.*, 24 Fed. Rep. 306, it was held by Judge Brewer that, in the absence of express authority in its charter, the city of Kansas had no power to grant to a street railway company the sole right for the space of twenty-one years to construct, maintain and operate their railway over and along the streets of said city. In. *Minturn* v. *Larue*, 23 How. 435, it was held that a charter authorizing the city of Oakland to establish and regulate ferries, or to authorize the construction of the same, gave no power to the city to grant an exclusive privilege. In the case of *Lehigh Water Co.'s Appeal*, 102 Pa. St. 515, the act went so far as to provide, amongst other things, that " the right to have and enjoy the franchises and privileges of such incorporation within the district or locality covered by its charter shall be an *exclusive* one ; and no other company shall be incorporated for that purpose until the said corporation shall have, from its earnings, realized and divided among its stockholders, during five years, a dividend equal to eight per centum per annum upon its capital stock." It was held by the court that, notwithstanding such a provision, the right of the water company was exclusive only as against other private water companies, but not as against the borough. Without multiplying citations in support of the construction which we have put upon said statute, it is sufficient to say that the authorities are singularly uniform in sustaining the conclusion to which we have arrived. We have examined the authorities relied on by complainants' counsel in support of the construction of said statute contended for by them, but fail to find that they materially conflict with the doctrine above stated. The case of *Atlantic City Water Works Co.* v. *Atlantic City*, 39 N. J. Eq. 367, which is specially relied on, is clearly distinguishable from the cases at bar, in that the act of the legislature, P. L. of

1866, p. 318, by virtue of which the ordinance there in question was passed, authorized the city council to pass such ordinances *as they should judge proper* for providing a supply of water for the city. They passed an ordinance granting the *exclusive* right to the complainant to furnish water to the city and its inhabitants, and the court held that, whether or not the city's grant of the exclusive privilege granted was *ultra vires* and void as creating a monopoly, the city had exhausted its power as to providing a water supply, and moreover *that the complainant's franchise, which was granted by the legislature*, was exclusive, and that consequently the court would by injunction protect the complainant in its rights ; the Chancellor saying that "Equity will protect a corporation entitled to the enjoyment of an *exclusive* franchise, against unlawful competition." We see no occasion to question the soundness of this decision. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, is not in point for the reason that in that case the charter of the complainant corporation expressly granted to said company the exclusive privilege of making and selling gas in New Orleans. And the court held that a legislature grant of an exclusive right to supply gas to a municipality and its inhabitants, through pipes laid in the public streets, and upon the condition of the performance of the service by the grantee, is a grant of a franchise vested in the State, in consideration of the performance of a public service, and, after performance by the grantee, is a contract protected by the Constitution of the United States against State legislation to impair it. *State* v. *Columbus Gas Light & Coke Co.*, 34 Ohio St. 572, was also a case where the charter of the complainant contained an express provision giving to the corporation the exclusive privilege of supplying the city of Columbus and its inhabitants with gas, for the term of twenty years ; and hence it has no bearing on the question now under consideration.

But it is urged by the complainants that the town of Westerly has recognized the existence and validity of said contract by a certain vote which it passed relative thereto on

April 11, 1895. Said vote is as follows : "That the town council of the town of Westerly be and it is hereby requested to agree if possible with the Westerly Water Works of said town upon a third referee under the agreement between said town and said Westerly Water Works." Doubtless this vote may properly be said to have amounted to a recognition of the existence of the contract in question in so far, at any rate, as it confers upon the town the right to purchase the water works, which had been constructed by virtue thereof. But, even assuming that it was a recognition of the contract in its *entirety*, still it does not amount to an adoption or ratification thereof by the town. And indeed, even assuming, still further, that it did thus operate, it could not have the effect to validate said contract, for the very conclusive reason that the town itself in its corporate capacity had no authority to make said contract. And it hardly needs to be argued that the town could not ratify a contract which it had no power to make originally. The power to make such a contract as the statute contemplates is expressly conferred upon *town councils ;* and hence the maxim "*expressio unius est exclusio alterius*" is clearly applicable. Nor is the town estopped from taking advantage of the incapacity of said town council to make said contract because the other party thereto acted in good faith in making the same, and has on its part fulfilled all the obligations which it assumed thereunder, as contended by complainants' counsel. *McTwiggan* v. *Hunter*, Index RR. 95. It was bound at its own peril to know the extent of the authority of the town council and also of the town in the premises. *Austin* v. *Coggeshall*, 12 R. I. 329. To what we have said above regarding the proper construction to be put upon said statute, it may be added that under Pub. Laws R. I. cap. 566, passed June 1, 1876, town councils were given power to grant to any person or corporation the *exclusive* right to lay water pipes in the public highways of the town, for the purpose of supplying the inhabitants thereof with water ; but that subsequently, in the revision of 1882, said power to grant the *exclusive* right to use the highways for such purpose was cut down to the

power to grant simply the *right* so to do, and said chapter 566 was repealed.   See Pub. Stat. R. I. cap. 38, § 32, together with cap. 260, § 12.

But the complainants further contend that not only was the granting of said franchise by the town council acquiesced in and approved by the town, but that it was subsequently sanctioned by the legislature in the charter of the Westerly Water Works.   An examination of said charter, however, fails to show any ratification or adoption of said contract, or any reference thereto.   And while the act in some respects closely follows the terms of the attempted grant from the town council, and was evidently drafted with said contract in the mind and probably in the presence of the scrivener, yet it materially differs therefrom in other respects ;  and while granting rights in the streets for an indefinite period, yet neither itself grants nor recognizes any authority in the town council to grant an *exclusive* right therein.   In this connection we will briefly refer to the case of *Citizens' Water Co.* v. *Bridgeport Hydraulic Co.*, 55 Conn. 1, which it is claimed by complainants' counsel is a strong authority in its favor.   While that case comes nearer to sustaining the construction contended for than any of the others, yet it is clearly distinguishable from the cases at bar.   The main point of similarity between that case and those now before us is that there, the common council of Bridgeport, in 1853, accepted a proposition made by G. to supply the city with water, and granted him (with a right of assignment) the exclusive right to lay pipes in the streets so long as a full supply of pure water should be furnished.   In 1857 the Bridgeport Hydraulic Co. was incorporated with power to acquire, and which did acquire, all the right of G. under the vote of the city, and became charged with all his duties.   And this company soon after expended a large sum of money in acquiring property and establishing its water works.   In granting said charter, the general assembly expressly recognized and confirmed the grant made by said city ;  and the court held that said grant thereby became as effective as if the city had had the power to make it and as if the legislature had made it in the most

direct and explicit words.    But it is clearly evident from the opinion of the court that without said act the grant of the exclusive use of the streets in said city would not have been sustained.    The court say : "Inasmuch as Nathaniel Greene had power to bind himself to furnish water for a specified consideration, if the city had possessed power to bind itself in the manner proposed, there would have been no reason for the interference of the legislature in the matter ; the contract between an individual and the city would of necessity have been left to the parties, or to judicial arbitrament if they had disagreed.    *In the want of power upon the part of the city to give to Nathaniel Greene a binding obligation to do what it desired to do, is found the only reason for the existence of the seventeenth section ; to give the needed legislative sanction to the city's desire to grant, and to its act of granting the exclusive use of the streets in return for the supply of water.*    The legislature having in effect authorized the city to make a contract which it desired to make, will not, cannot, now relieve it."    If the charter of the Westerly Water Works had expressly, or perhaps by necessary implication, recognized and adopted the contract now in question, a very different state of facts would be presented, and the case might, and probably would be decided in accordance with the one just referred to.    But no reference whatever being made in the charter of the Westerly Water Works to said contract, and nothing appearing to show that the legislature had any knowledge even of its existence, we clearly should not be warranted in holding that simply because there is quite a striking similarity between the 10th section thereof and one clause of said contract, therefore said act amounts to an adoption or ratification thereof.

We therefore decide that the contract entered into between the town council of Westerly and the Westerly Water Works Co. did not confer upon said company, or upon their successor, the Westerly Water Works, the exclusive right to use the public highways and grounds of said town for the laying and maintaining of water pipes for the purposes aforesaid.

The second question is whether the town of Westerly has

the right to construct water works of its own.     We think it has.     Pub. Laws R. I. cap. 285, passed March 30, 1882, entitled "An Act in relation to supplying towns with water," (now Gen. Laws R. I. cap. 123,) provides that: "Whenever the electors of any town, qualified to vote upon questions of taxation or involving the expenditure of money, shall have voted, at a town meeting called for that purpose, to provide a water supply for the inhabitants of such town, or for some part thereof; or whenever any town shall enter or shall have entered into any contract with any person or corporation to furnish such town with such a water supply (a contract which towns are hereby authorized to make,) then such town, or the person or corporation bound to fulfill such contract, as the case may be, may take, condemn, hold, use, and permanently appropriate any land, water, rights of water and of way necessary and proper to be used in furnishing or enlarging any such water supply, including sites and materials for dams, reservoirs, pumping stations and for coal houses, with right of way thereto, and right of way for water pipes along and across public highways and through private lands, and including also lands covered or to be flowed by water, or to be in any other way used in furnishing, enlarging or maintaining any such water supply.     And if any change in any highway shall be required for the accommodation of such water supply, then such town, person or corporation may alter the grade of such highway or construct a bridge therein, under the direction of the town council of the town where such change is made, and as far as may be needful, first giving bond with surety satisfactory to a justice of the supreme court, if requested, conditioned to reimburse such town for every expense and damage occasioned by such change of grade or other change in such highway."     Said act also provides for the payment of any property taken for said purposes; for the manner by which property may be condemned; how the damages to the owner thereof shall be ascertained; the manner of determining whether the taking of property for said purposes is necessary; the appointment of commissioners to appraise the damages sustained by reason of the

taking of property ; the right of trial by jury in favor of any party aggrieved by any award of damages which may be made on account of such taking, and generally for all the usual and necessary proceedings common to the exercise of the right of eminent domain.   Indeed, we fail to see that there can be any doubt as to the sufficiency of the authority of any town under said act to construct and maintain water works of its own.   This is its evident scope and purpose, and we think it is ample and sufficient for the accomplishment thereof.

But complainants' counsel urge the insufficiency of said act in that it nowhere expressly says that towns are *authorized* after a vote of the taxpayers so to do to build water works.   It is true that the act does not use this particular language, but it does use language equally as effectual and pertinent ;  and it makes no difference what particular form of language the general assembly has seen fit to adopt so long as it is clearly sufficient to accomplish the object sought to be obtained.

But counsel for the complainants further argue that the legislature itself, by the passage of other acts since the passage of said chapter 285, especially authorizing towns to build and construct water works has placed its own construction upon the extent of the powers conferred by that chapter ; and he instances the passage of the "Act for supplying the town of Cumberland with pure water," passed May 25, 1893, the same being Pub. Laws R. I. cap. 1254.   The contention is that the General Assembly, in passing the last named act, impliedly decided that, notwithstanding the provisions of said chapter 285, still towns have no authority to build water works without further legislation.   We fail to see the force of this argument.   It is very common for a particular town to desire something different in the way of legislation from that which is provided for towns in general, not only as to the mode of constructing and maintaining water works, but also as to very many other things in connection with the management of the local affairs thereof. An examination of the legislation of the State shows that

quite a large proportion of our laws have been passed to meet
the wants, or wishes at least, of some individual town or dis-
trict, and hence of course have only a local application.    In-
deed, special legislation of this sort, is, and long has been a
marked feature of the law making branch of our State gov-
ernment.    But this fact in no wise detracts from the force
and authority of general laws in those towns where matters
of this sort are not regulated by special acts.    Although an
examination of said chapter 1254 shows that in minor par-
ticulars it is somewhat different from chapter 285, yet we
fail so see that its general scope or authority is any greater,
or that the passage thereof tends in the least to show that
the legislature considered that said town of Cumberland was
not invested with full general powers in the premises before
the passage thereof.    But even assuming that the legislature
did consider that the passage of said chapter 1254 was neces-
sary in order to authorize the town of Cumberland to con-
struct water works ; or, to state it differently, that said
chapter 285 was insufficient for said purpose, still, such legis-
lative construction, while entitled to great respect, should not
control the action of the court on a question so free from
doubt as the one now under consideration.    See *State* v. *Dis-
trict of Narragansett*, 16 R. I. 424, 440 ; Sedgwick, Statu-
tory Law, 2d ed. p. 214 ; Sutherland, Statutory Construction,
§ 311, and cases cited.

As to the third and last question aforesaid, viz. :  Does the
vote of the town, passed April 11, 1895, authorize the con-
struction of water works ?    Said vote is as follows :—

" *Resolved :* That the town council of the town of Westerly,
be and it is hereby requested to agree if possible with the
Westerly Water Works of said town upon a third referee
under the agreement between said town and said Westerly
Water Works, and in case no such agreement can be arrived
at within thirty days from the date of this meeting, the said
town council is hereby directed to contract for and construct,
water works for said town, not to exceed in cost the sum of
$150,000."

In order more fully to understand this vote, it is necessary

to refer to a former vote of the town passed June 2, 1891, and also a vote of the town council subsequently passed on the same day, in pursuance thereof.    Said votes are as follows :    Vote of the town :—

"*Resolved :* That the town council be, and they are hereby instructed to notify the Westerly Water Works Company, in writing, that the town desires to purchase the property of the Westerly Water Works Company, and they are further instructed to take all necessary action in accordance with the provisions of the franchise of the said Westerly Water Works Company, to ascertain at what price the Westerly Water Works can be purchased."

Vote of the town council :

"Whereas, The town of Westerly, in town meeting duly assembled, did on the second day of June, A. D. 1891, adopt the following resolution : (Then follows the above.)

"Now therefore, it is voted by the town council of said Westerly, that the clerk of the council be, and he is hereby authorized and instructed to notify the Westerly Water Works, a corporation duly incorporated, and located in said town of Westerly, that said town of Westerly desires to purchase the property of the said Westerly Water Works, together with all the rights, privileges and appurtenances to the same in any wise appertaining and belonging, in accordance with said resolution adopted by said town as aforesaid."

While not particularly questioning the sufficiency of said vote of April 11, 1895, as such, to confer the necessary authority upon the town council to construct water works, yet complainants' counsel contend that the town had no authority to pass said vote, because the notice contained in the warrant, pursuant to which said town meeting was held, did not justify the action taken.    The article or notice contained in the warrant calling said town meeting was as follows : "to hear and consider the report of the arbitrator selected on behalf of the town, as to progress in matter of determining value of the Westerly Water Works, and to take such further action as the town shall see fit with reference to the purchase of said Water Works, and also to consider the question of

advisability of constructing, maintaining, and operating New Water Works by the town."

The statute requires that the warrant calling a special town meeting shall contain a notice of the business to be transacted therein, and also that no vote shall be passed in any town meeting concerning the making of a tax unless special mention thereof be made in the warrant. See Pub. Stat. R. I. cap. 35, §§ 8, 12, now Gen. Laws R. I. cap. 37, §§ 8, 12. We think the notice above quoted clearly answers the statutory requirement, and hence that it was sufficient to authorize the passage of the vote or resolution in question. All that is necessary in such a notice is that it be sufficiently explicit to call the attention of the voters to the subject to be considered and acted on. *Marden* v. *Champlin*, 17 R. I. 423, 427 ; *South School District* v. *Blakeslee*, 13 Conn. 227 ; and if this is done substantially, it is sufficient. *Torrey* v. *Millbury*, 21 Pick. 64. "The articles inserted in warrants for calling town meetings," says Mr. Justice Hubbard, in *Haven* v. *Lowell*, 5 Met. 35, "presenting the various subjects for the consideration of the inhabitants, are from the very nature of the case general in their description, and are oftentimes inartificial in their construction. They are the mere abstracts or heads of the propositions which are to be laid before the inhabitants for their action ; and matters incidental to and connected with such propositions are alike proper for their consideration and action." See also *Fuller* v. *Groton*, 11 Gray, 340 ; *Commonwealth* v. *Wentworth*, 145 Mass. 50. We think that no one who read the notice of said meeting could fail to understand that a proposition to construct water works by the town was liable, at any rate, to be taken up and acted on. And of course every voter must have known that the construction of such works would necessarily involve the expenditure of a large sum of money. Nor does the fact alleged in complainants' bill, viz., that there were only 123 out of a total of about 600 voters present at said meeting, conclusively show, as contended by counsel, that the taxpaying voters did not suppose that any such action could be taken. It is matter of common knowledge that

special town meetings, in particular, are frequently if not usually, attended by less than a majority of the voters. They are too busy about their own affairs, or too indifferent. regarding the particular matters to be acted on, to devote their time or attention thereto, and hence the business must necessarily be transacted by a minority of the total number of voters in the town.   And while it were well if this were otherwise, and the people took a more general and active interest in public affairs, yet we must take things as we find them, and judge accordingly.

For the reasons above given, the demurrers must be sustained.

*Joseph C. Ely & Walter B. Vincent,* for complainants. Smith and others.

*Walter H. Barney,* for complainants, Arnold and wife.

*Francis Colwell & Albert B. Crafts,* for respondents in both cases.