James M. MAGEAU et al.

v.

John W. WEDLOCK et al.

No. 84–14–Appeal.

Supreme Court of Rhode Island.

Feb. 25, 1986.

James J. Mullen, Barrington, for plaintiffs.

John P. Toscano, Jr., Westerly, for defendants.

## OPINION

KELLEHER, Justice.

The issue in this controversy is the legality of certain actions taken by the town of Charlestown's moderator at the May 2, 1983 annual financial town meeting and at a special financial town meeting that was convened on order of the town council two weeks later, on May 16 and 17. Presented with this controversy, in which there was no dispute as to the material facts, a Superior Court justice, after reviewing the pertinent records, ruled in the plaintiffs' favor. The town's moderator, council, and treasurer have appealed.[1]

The annual meeting was held at the auditorium of the Charlestown Elementary School on May 2, 1983. The warrant listed twelve proposed expenditures which, when added together, totaled almost $4,450,000. The moderator called the meeting to order at 7:50 p.m. After disposing of the preliminaries, including such matters as the waiving of the reading of the warrant and the treasurer's report, a motion was made and seconded to adopt the proposed multi-million-dollar budget in its entirety. The plaintiff Mageau then moved to amend the

---

1. In this action, which was commenced after the regular financial town meeting, the plaintiffs sought a declaratory judgment and monetary damages for violation of their civil rights. The trial justice has considered only the declaratory-judgment portion of the plaintiffs' claim. This appeal was taken after the trial justice, acting pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, certified that even though the plaintiffs were seeking recovery on multiple claims, there was no reason to delay immediate consideration of the findings he made in the declaratory-judgment facet of this litigation.

motion to the effect that the budget be itemized and votes be taken item by item. The moderator ruled such a motion "out of order," insisting that he was bound to follow the warrant as printed. The motion to adopt the budget in its entirety was then defeated. Thereafter, efforts to have each of the twelve expenditures approved went for naught. At this juncture, Mageau moved that each of the twelve proposed expenditures be itemized and voted upon item by item. The moderator continued to rule this motion out of order. The meeting adjourned. The proposed budget remained a proposal, and those who led the itemization forces sought judicial relief.

Faced with an impasse, the town council passed a resolution calling for a special financial town meeting for May 16, 1983, and a warrant containing this announcement was issued by the town clerk.[2] On the evenings of May 16 and 17 the electors returned to the Charlestown Elementary School for another go at the budget. The warrant for the special financial town meeting listed thirty-three separate expenditures. Among the proposed expenditures[3] were the following four categories:

| | |
|---|---|
| Town Council | $ 66,575 |
| Town Buildings and Grounds | 23,640 |
| Town Clerk's Office | 70,075 |
| Police Department | 310,995 |

The council also furnished the voters with a detailed breakdown listing the specific expenses whose amounts were included in each of the four proposed expenditures listed above. This itemization, however, was not included in the warrant.

At the meeting motions were made to reduce or eliminate certain of the expenses included in each of the four categories, with specific reference being made to the expense sheets circulated by the town council. As a consequence, the electors voted to reduce (1) the appropriation proposed for the Town Council by $2,750, (2) the proposed expenditure for Town Buildings and Grounds by $2,500, (3) the proposed expenditure for the Town Clerk's Office by $10,325, and (4) the suggested appropriation for the Police Department by $18,000. A fifth motion sought to increase the council's estimate as to the anticipated surplus by an additional $117,000. An increase in the surplus estimate would have automatically decreased the amount to be collected through taxation.

No one disputes that the motions to reduce the amounts listed in the Town Council and Town Buildings and Grounds categories as well as the motion to increase the anticipated surplus were passed by a clear majority. However, the "for" votes for a reduction in the amounts listed in the Town Clerk's Office and Police Department categories exceeded the "against" votes, but when the "against" votes were combined with the votes of those who chose to abstain, such a combination exceeded the "for" votes. This factor took on great importance when the moderator ruled that a vote to abstain was a vote to be counted as an "against" vote and thus declared that the motions to reduce the Town Clerk's Office and Police Department appropriations were defeated.

The trial justice, after declaring that the clerk's warrant had sufficiently notified the

---

**2.** At the time the council had scheduled the May 16 meeting, the plaintiffs had initiated this litigation. As a result of a conversation with the trial justice, it was agreed that the meeting would go on as advertised but that the moderator would accept motions to reduce specific items in the budget prepared by the council without prejudice to defendants' right to argue the legality of the positions that they have espoused here.

**3.** Chapter 6 of Charlestown's charter provides for the appointment of a budget commission by

the town council. The town administrator submits to the commission the various budget requests he has received from all departments, offices, and agencies. In due course, the budget commission presents its recommended budget to the town council who may revise it. After adoption of the budget, a public hearing is held, and the budget may be revised again. At the financial town meeting, the council submits a printed report which includes the proposed budget.

voters of what was to be considered at the financial town meeting, ruled that (1) the voters could impose limitations on the amounts to be expended in the four categories to which we have referred, and such limitations were binding upon the town council, (2) the moderator erred when he ruled that a voter's decision to abstain from voting would be considered a vote against the proposed expenditure; consequently, the motions made by the taxpayers for reducing the amounts set forth in the warrant for the Town Clerk's Office and Police Department categories were to be considered as having been approved, and (3) the voters could not alter the town council's estimate of the anticipated surplus. The defendants in their appeal challenge the trial justice's ruling as to the electors' ability to modify the council's proposed budget and the council's obligation to adhere to the reductions as well as the moderator's belief that a vote to abstain was the equivalent of an "against" vote.

The defendants argue that the voters, in their consideration of the proposed budget, could only accept or reject the bottom-line figures as to each of the categories contained in the warrant and could not indulge in the itemization-of-expenses approach proposed by plaintiffs. They appear to argue that the trial justice's action is completely at odds with the provisions of G.L. 1956 (1980 Reenactment) § 45-3-12, which in its pertinent portions dictates that no vote calling for the imposition of a tax shall be taken at a financial town meeting unless the warrant announcing the time and place of such meeting specifically mentions such a proposal. It seems that defendants espouse a philosophy holding that if the council's breakdown of expenses is not specifically set forth in the warrant, such information cannot be employed by the qualified voters who may come to the meeting with an eye or eyes cast for a close look at the expenditure of municipal funds.

The defendants' four-corners approach is at odds with past opinions of this court when, in speaking of what today is § 45-3-12, we observed: " 'All that is necessary in such a notice is that it be sufficiently explicit to call the attention of the voters to the subject to be considered and acted on.' " *Capone v. Nunes*, 85 R.I. 392, 397, 132 A.2d 80, 82 (1957); *Smith v. Town of Westerly*, 19 R.I. 437, 453, 35 A. 526, 532 (1896). Consequently, it is not necessary that a warrant contain an accurate forecast of the precise action that the meeting will take upon the subject matter stated in the warrant. 4 McQuillin, *Municipal Corporations* § 13.12 at 682 (3d ed. 1985 rev.).

Section 45-2-3.1 specifically authorizes, as it did in 1983, the town of Charlestown to vote at any legal meeting such sums of money as the voters of the town of Charlestown "shall judge necessary * * * [f]or any other services, expenses or charges deemed to be in the best interests of the town or towns by a majority of those voting thereon; said grant and vote by a majority of those voting is prima facie evidence that said expenditure and appropriation therefor is that which is permitted hereunder * * *." It is a well-settled proposition that absent an obligation to appropriate funds for a specific purpose, the voters at a financial town meeting may refuse to make any appropriations for a given purpose. *Hebert v. Duffy*, 45 R.I. 193, 196, 121 A. 127, 130 (1923).

It is equally well established that if the financial-town-meeting voters decide to make an appropriation, specific limitations may be attached to the appropriation. *Quinn v. Barber*, 31 R.I. 538, 544, 77 A. 1003, 1006 (1910). During the same period, in *H. P. Cornell Co. v. Barber*, 31 R.I. 358, 365, 76 A. 801, 803 (1910), our predecessors pointed out:

"When, in a financial town meeting, the taxpaying electors [now all voters pursuant to Article XXXVIII of the State Constitution] vote to expend money for a specific purpose and appropriate a sum of money therefor, the money so appropriated can only be lawfully applied to that purpose. The appropriation when made, however, is for the benefit of the

town, of all the inhabitants of the town, and not for the benefit of the taxpayers alone, and the moneys so appropriated become town moneys to be applied for the town purposes for which they were appropriated."

The trial justice found that none of the appropriations that plaintiffs sought to reduce were in any way obligations mandated by the state,[4] and defendants do not take issue with this proposition.

■ It is our belief from our consideration of the record, the pertinent statutes, and case law that the trial justice was correct when he ruled that the voters of Charlestown could modify the proposed budget in the manner in which they did at the May 16–17 special financial town meeting and that the council was bound by the modifications.[5]

The defendants also argue that the moderator had the discretion to rule that voters who abstain from voting would have such conduct indicate opposition to the proposal then before the body. In refuting this position, plaintiffs rely upon language found in §§ 45–2–3.1 and 45–3–21 to support the contention that since voting denotes assertive conduct, abstention, as such, cannot be considered an assertive act or considered a vote.

We need only consider § 45–2–3.1, which provides that votes on appropriations are to be decided by a majority of those *voting* thereon. Section 6–7–9 of the Charlestown charter also states that a quorum for a financial town meeting shall consist of no less than fifty voters, and all questions shall be decided by a "majority vote of the qualified electors present and *voting.*" (Emphasis added.)[6]

■ The trial justice faults the moderator's lumping of the "against" votes with the abstentions. The word "vote" as used in the statute and the charter connotes affirmative conduct, and abstention cannot be considered an affirmative act or a vote either for or against. We, like the trial justice, believe that the terms "voting" or "votes" as used in the legislation now before us indicate a decision or choice being made, whereas abstention is a conscious decision to refrain from making such a choice. In these circumstances, an abstention,[7] in our opinion, is not a vote, and therefore, the trial justice's conclusion that the moderator erred in equating abstentions with negative votes is correct.

The defendants' appeal is denied and dismissed, the declaratory judgment is affirmed, and the case is remanded to the Superior Court for further proceedings.[8]

4. *Dawson v. Clark*, 93 R.I. 457, 176 A.2d 732 (1962), stands for the proposition that school committees carry out a delegated power of the state's sovereignty, and therefore the expenditure of funds appropriated by the financial town meeting to the schools is within the sole discretion of the school committee.

5. One modification worth noting was a reduction in the equipment item in the Police Department's proposed budget from $18,000 to "0." The $18,000 was to have been spent for two police cruisers. The sponsor of the motion to reduce the department's budget recommended that the $18,000 be paid "out of Federal Revenue Sharing Funds." The moderator ruled that the recommendation was out of order.

6. Again, G.L.1956 (1980 Reenactment) § 45–3–21, the general enabling statute, states that all questions relating to town affairs, excepting elections, shall be decided by a majority of the voters present and entitled to vote on the question.

7. Much litigation has been generated regarding the problems of abstention, sickness, and resignation as they affect the requisite voting majority in legislative proceedings. Abstention by municipal legislators is thoroughly considered in Annot., 63 A.L.R.3d 1072 (1975).

8. At no time in this litigation have any of the litigants brought to the trial justice's or this court's attention the provisions of sec. 6–6–9 of Charlestown's charter. This section establishes a system of budgetary control. Once the annual budget has been approved by the financial town meeting, the town administrator has management responsibility for that budget. The administrator must authorize all expenditures from that budget according to the categorical allotments approved by the financial town meeting. However, if during the first three quarters of the fiscal year the administrator determines that the appropriations within categories in a given department, office, or agency will not be sufficient for that fiscal year, the administrator may

"revise" the allotment within the particular department, office or agency. During the last quarter of the budget year, the council is given the authority to "revise" allotments between departments, offices, commissions, and agencies. The only entity exempt from the provisions of this section is the school department. Since sec. 6–6–9 was never referred to in this litigation, its impact, if any, on the budget modifications effectuated at the May 1983 special financial town meeting will not be considered by this court in light of our well-established principle that issues not raised before the trial court will not be considered on appeal by this court.