## WESTERLY WATERWORKS v. TOWN OF WESTERLY et al.

### SEAMEN'S FRIEND SOC. et al. v. SAME.

#### (Circuit Court, D. Rhode Island. June 30, 1896.)

#### Nos. 2,522, 2,523.

1. MUNICIPAL CORPORATIONS—WATERWORKS FRANCHISES—EXCLUSIVE RIGHTS.
   The Rhode Island statute of March 30, 1882 (Pub. Laws, c. 285), authorizes towns to make "any contract" with persons or corporations to furnish a water supply; and the act of May 2, 1884 (Pub. Laws, c. 425), empowers town councils to grant the right to lay water pipes in the public highways, and to consent to the erection of reservoirs, etc., "on such terms and conditions as they deem proper." *Held*, that neither of these acts empowers towns to grant to any person or corporation an exclusive right to construct and maintain waterworks. 35 Atl. 526, followed.

2. FEDERAL COURTS—CONSTRUCTION OF STATE STATUTES—STATE DECISIONS.
   A decision by the supreme court of Rhode Island construing a state statute, though made upon demurrer, *held* to be binding on a federal court in a subsequent suit, especially on a motion for a preliminary injunction.

8. MUNICIPAL CORPORATIONS—GRANT OF WATERWORKS FRANCHISE—RATIFICATION.
   Under the Rhode Island statute of May 29, 1891 (Pub. Laws, c. 975), town councils may make contracts granting exclusive waterworks franchises, but only on condition that the grantors shall pay a special tax on the gross earnings. *Held*, that a town could not, by acts done after the passage of this statute, ratify a previous grant of an exclusive franchise, which grant contained no such condition.

4. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—MUNICIPAL ORDINANCES.
   A state statute authorized a town to construct waterworks, and also to contract with third parties for a water supply. The town adopted the latter course, and granted to a corporation a right to construct waterworks, and supply the town on certain conditions. After the water company had constructed an adequate plant, and was prepared to comply with its contract in all essentials, the town passed a vote to itself construct a waterworks plant. *Held* that, as this action was taken under authority of the state statute, it was, in effect, an act of the state, which impaired the obligation of the previous contract with the water company, contrary to the constitution of the United States.

These were suits in equity, brought, respectively, by the Westerly Waterworks and the Seamen's Friend Society and others, to enjoin the town of Westerly, R. I., and others, from constructing a system of waterworks. The cases were heard together, on motions for preliminary injunctions.

J. M. Ripley, W. B. Vincent, and J. C. Ely, for complainant Westerly Waterworks.

W. C. Loring, W. B. Vincent, and R. W. Boyden, for complainants Seamen's Friend Soc. and others.

F. Colwell, W. H. Barney, and A. B. Crafts, for respondents, town of Westerly and others.

CARPENTER, District Judge. These two bills in equity have been heard together on motions for a preliminary injunction. The bill and the other proofs, taken together, show the following facts:
On the 29th day of June, 1885, the town council of Westerly voted

to accept the proposition of James M. Pendleton and others to grant to them and to their successor, the corporation which they proposed to organize, "the right to use the public highways and public grounds of this town" for the purpose of laying water pipes, and supplying the inhabitants and the town with water, "the same to be freely and fully enjoyed so long as the said inhabitants shall be reasonably supplied with water thereby," and the right to erect reservoirs within the town, and "the exclusive right to use the public highways and public grounds of this town for the purpose aforesaid, * * * for and during the period of twenty-five years from this day, subject, however, to what rights cr privileges are now possessed or enjoyed by any party or parties who have pipes already laid and in operation; and that the said franchises, water pipes, reservoirs, and the land and works connected therewith, be exempted from taxation to the full extent authorized by the statute law of this state, for and during the period of twenty-five years from this day; provided, however, that said grant shall cease to be exclusive, and such exemption from taxation shall cease entirely, whenever said Westerly Waterworks Company, or their heirs, executors, administrators, or assigns, shall neglect or fail to supply water for the purposes aforesaid in reasonably sufficient quantity, and of proper purity, through all the pipes which they may lay down, or whenever they shall fail to fulfill any part of the conditions of this vote and grant, provided that such neglect or failure shall continue for an unreasonable time after notice thereof, in writing, from the town council of said Westerly." The grant was on the further condition that the works be commenced within 2 months, and completed within 18 months; that the grantees should restore highways where disturbed by them, and hold the town harmless against certain claims for damages; that the grantees "shall at all times furnish, free of charge or cost to this town, a reasonable supply of water for its town hall building, and for so many drinking fountains, not exceeding ten, for man and beast, at such public places in said village of Westerly, on or near the line of water mains, as said town council shall designate"; that the pipes used shall be of a certain size and strength; that plats shall be filed showing where pipes are proposed to be laid; that additional pipes shall be laid under specified conditions; that a certain head of water shall be maintained for fire hydrants; that service pipes shall be laid, and meters furnished; that the rates charged for water shall not exceed certain specified amounts; that, "at any time within twenty-five years from this day, the town of Westerly shall have the right to purchase said works and pipes, reservoirs, pumps, and other property, rights, and appurtenances connected, used, or belonging therewith or thereto, by giving the said Westerly Waterworks Company, their heirs, executors, administrators, or assigns, notice in writing, one year in advance, of its desire to purchase. The valuation of said waterworks and property belonging thereto shall be ascertained (provided said parties hereto cannot agree) as follows: The town council of said town to choose one party; said Westerly Waterworks Company, their heirs, executors, administrators, or assigns, to choose one party; and the two parties so chosen,

if they cannot agree, shall choose a third; and the three so chosen shall proceed without delay to appraise said waterworks and property belonging thereto, and they, or a majority of them, shall fix a fair cash valuation thereon. When said price has been fixed or agreed upon as aforesaid, the town of Westerly shall have the option of buying at said price or not, as it may elect"; that the grantees should within 10 days file an acceptance in writing of the grant, and "upon such acceptance this vote and resolution shall constitute the contract, and shall be the measure of the rights and liabilities of said town and of said Westerly Waterworks Company, their heirs, executors, administrators, or assigns, in the premises; and the same shall be binding, from and after said acceptance, upon said town, and upon said Pendleton, Clarke, Utter, Foster, Peabody, Charles, Jr., and Arthur Perry, and Crandall, their heirs, executors, administrators, and assigns." The grantees duly filed their acceptance of the grant, and in May, 1886, were incorporated under the name of the Westerly Waterworks, and succeeded by assignment to the property and rights of the grantees in the contract above described. The charter was granted "for the purpose of introducing and continuing a supply of pure water into the town of Westerly and vicinity, to be used for domestic, manufacturing, and other purposes, and for fire protection, with all the powers and privileges, and subject to all the duties and liabilities, set forth in chapters 152 and 155 of the Public Statutes, and in chapter 285 of the Public Laws, and in all acts in amendment of said chapters and in addition thereto." The charter also provided that the waterworks to be constructed by the company might within 25 years be sold to and purchased by the town, on terms and conditions which are stated in the charter, in the same terms as in the above contract.

The Westerly Waterworks have, at large expense, constructed waterworks in accordance with the contract, and have in all respects complied with their obligations thereunder. On the 1st day of November, 1886, the Westerly Waterworks made a mortgage of the waterworks and franchises to the Rhode Island Hospital Trust Company, in trust to secure the payment of mortgage notes to the amount of $100,000. These notes were issued, and of them $98,000 is still outstanding, of which the complainants in the suit of the Seamen's Friend Society are the owners and holders of $17,500. The expenditures by the waterworks and the purchases of the bonds were at all times made on the faith of the grant above described. On the 20th of August, 1885, the grantees notified the town council that they had commenced the construction of a reservoir; and on the 7th of September, 1885, the town council voted to receive and record the notice.

On the 31st of May, 1886, the town council voted:

"That the plat of the streets and public highways of the village of Westerly as made and this day presented by the Westerly Waterworks Company be, and the same is, received and approved; and that the following highways and streets, or parts of the same, be, and they are hereby, designated as the highways and streets where the said waterworks company shall lay, or cause to be laid, water pipes, viz.: Canal, Pierce, Pleasant, Dayton, from Pleasant street to David Sunderland's store, High, from Broad street to the corner of Pierce

street, Dixon, Grove avenue, Broad, Main, Union, Elm, Cross, from Main street to the corner of Hobart street, Beach, from Main street to the greenhouse of Simon Reuter, School, from Main street to the corner of Spring street, Chestnut, Granite, and Spring streets."

### On the 4th of October, 1886, the town council voted:

"That Samuel H. Cross be, and he is hereby, appointed a committee to go over the streets where the Westerly Waterworks have and are to lay pipes, according to the vote of this council heretofore passed, and to see the said Westerly Waterworks Company leave the streets in proper condition."

### On the 18th of December, 1886, the town council voted:

"That this council are satisfied that the Westerly Waterworks have laid their pipes in all those streets and portion of streets in this town heretofore designated in which said Westerly Waterworks should lay pipes, and with the size therefor; that the works of said company have been completed within the time limited in their franchise, with the pressure and number of streams shown, and the height to which water has been thrown in Dixon House Square."

### On the 2d of May, 1887, the town council voted:

"That John Clarke be, and he is hereby, appointed a committee to see that the streets in this town through and in which the pipes of the Westerly Waterworks are laid, which have been, and which hereafter may be, opened by said waterworks, be put in a good and satisfactory condition."

### On the 4th of May, 1889, the town council voted:

"That William B. Austin and Albert H. Spicer be, and they are hereby, appointed a committee with full power to purchase and locate three public drinking fountains in the village of Westerly."

### On the 7th of November, 1889, the town council voted:

"That the Westerly Waterworks be, and they are hereby, granted permission to lay a water pipe across or upon that portion of the 'Stillmanville Bridge,' so called, belonging to this town. Said waterworks are to save the town harmless from all damage that may hereafter arise by reason of said pipe so passing across or upon said bridge, and to entirely remove the same, or take away temporarily, as may hereafter be directed by the town council of this town for the time being."

At the annual meeting of the Westerly Fire District, a corporation organized under the laws of the state of Rhode Island, held November 3, 1890, it was voted:

"That the town of Westerly be requested to ascertain at what price the Westerly Waterworks can be purchased by the town, under the provisions contained in the franchise granted to the said Westerly Waterworks by said town of Westerly, and to report the same to this Westerly Fire District."

### On the 1st of December, 1890, the town council voted:

"That the certified copy of the resolutions passed by the Westerly Fire District at its annual meeting held November 3, 1890, said resolutions requesting the town to ascertain at what price the Westerly Waterworks can be purchased, etc., be received and placed on file."

### On the 2d of June, 1891, the town of Westerly voted:

"That the town council be, and they are hereby, instructed to notify the Westerly Waterworks Company, in writing, that the town desires to purchase the property of the Westerly Waterworks Company, and they are therefore instructed to take all necessary action, in accordance with the provisions of the franchise of the said Westerly Waterworks Company, to ascertain at what price the Westerly Waterworks can be purchased."

On the same day the town council passed the following vote:

"Whereas. the town of Westerly, in town meeting duly assembled, did on the 2d day of June, A. D. 1891, adopt the following resolution: 'Resolved, that the town council be, and they are hereby, instructed to notify the Westerly Waterworks Company, in writing, that the town desires to purchase the property of the Westerly Waterworks Company, and they are therefore instructed to take all necessary action in accordance with the provisions of the franchise of the said Westerly Waterworks Company, to ascertain at what price the Westerly Waterworks can be purchased:' Now, therefore, it is voted by the town council of said Westerly that the clerk of the council be, and he is hereby, authorized and instructed to notify the Westerly Waterworks, a corporation duly incorporated and located in said town of Westerly, that said town of Westerly desires to purchase the property of the said Westerly Waterworks, together with all the rights, privileges. and appurtenances to the same in any wise appertaining and belonging, in accordance with said resolution adopted by said town as aforesaid."

On the 8th day of June, 1891, the clerk of said town council, as provided in the vote of said town council passed June 2, 1891, sent to said Westerly Waterworks notice in writing that the town desired to purchase the property of said company, in accordance with the provisions of the franchise of said company.

On the 7th of November, 1892, the town council voted:

"That Samuel M. Gray, of Providence, R. I., be, and he is hereby, appointed and chosen as arbitrator on the part of this town, for the purpose of ascertaining the valuation of the Westerly Waterworks and the property belonging thereto, in accordance with the proposal of the Westerly Waterworks Company to the town of Westerly, and duly accepted and passed upon by the town council of said town on the 29th day of June, A. D. 1885."

On the 5th of December, 1892, the town council voted:

"That the communication from the Westerly Waterworks Company advising that said company has appointed J. Herbert Shedd, of Providence, to represent them in the arbitration proceedings, in accordance with the proposal of said company to this town, and passed June 29, A. D. 1885, be received and ordered placed on file."

Since the 29th of May, 1891, the waterworks has greatly extended its system of waterworks, and has continued to fulfill its obligations under the contract, including a supply of water for town use, at an expense to the company of $1,000 a year, to the knowledge of the town and town council, and relying on their contract. The arbitrators appointed by the parties failed to agree as to the value of the property, and also failed to agree on a third arbitrator; and the parties, after some negotiation, have also failed to agree upon a third arbitrator.

On the 11th of April, 1895, the town of Westerly voted:

"That the town council of the town of Westerly be, and it is hereby, requested to agree, if possible, with the Westerly Waterworks of said town, upon a third referee, under the agreement between said town and said Westerly Waterworks; and, in case no such agreement can be arrived at within thirty days from the date of this meeting, then said town council is hereby directed to contract for and construct waterworks for said town, not to exceed in cost the sum of one hundred and fifty thousand dollars ($150,000)."

On the 13th of May, 1895, the town council appointed a committee to carry into effect the above vote of the town; and various other votes have been passed by the council, under all which the town

is now proceeding to contract for and construct a waterworks for the purpose of supplying the inhabitants of the town with water. The effect of this proceeding, if carried out, will be to destroy the value of the present waterworks and the value of the bonds issued by the company. The company has at hand a supply of pure water, equal in amount to about double the present demand for the village of Westerly.

The following statutes of Rhode Island are cited as authorizing the various acts of the town as above recited:

Pub. Laws, c. 285, passed March 30, 1882, is as follows:

"Whenever the electors of any town, qualified to vote upon questions of taxation or involving the expenditure of money, shall have voted, at a town meeting called for that purpose, to provide a water supply for the inhabitants of such town, or for some part thereof; or whenever any town shall enter or shall have entered into any contract with any person or corporation to furnish such town with such a water supply (a contract which towns are hereby authorized to make), then such town, or the person or corporation bound to fulfil such contract, as the case may be, may take, condemn, hold, use and permanently appropriate any land, water, rights of water and of way necessary and proper to be used in furnishing or enlarging any such water supply, including sites and materials for dams, reservoirs, pumping stations, and for coal houses, with right of way thereto, and right of way for water pipes along and across public highways and through private lands, and including also lands covered or to be flowed by water, or to be in any other way used in furnishing, enlarging or maintaining any such water supply. * * *"

Pub. Laws, c. 425, passed May 2, 1884, is as follows:

"The town council of any town, or the city council of any city, may grant to any person or corporation the right to lay water pipes in any of the public highways of such town or city for the supplying the inhabitants of such town or city with water, and may consent to the erection, construction and the right to maintain a reservoir or reservoirs within said town or city, for such a time and upon such terms and conditions as they may deem proper, including therein the power and authority to exempt such pipes and reservoirs, and the land and works connected therewith, from taxation."

Pub. Laws, c. 975, passed May 29, 1891, is as follows:

"Section 1. Any town or city, by vote of the town council or city council, may pass ordinances or make contracts to be executed by its proper officers, granting rights and franchises in, over or under the streets and highways in such town or city to such corporation, and for the purposes and upon the condition hereinafter specified.

"Sec. 2. Such grants, whether by ordinance or by contract, may confer upon any corporation created by the general assembly of Rhode Island for the purpose of distributing water, or for the purpose of producing, selling and distributing currents of electricity to be used for light, heat, or motive power, or for the purpose of manufacturing, selling, and distributing illuminating or heating gas, or for the purpose of operating street railways by any motive power, or for the purpose of operating telephones, the exclusive right, for a time not exceeding twenty-five years, to erect, lay, construct and maintain for the purposes for which such corporation is created, poles, wires, pipes, conduits, rails or cables with necessary and convenient appurtenances as may be required for the conduct of the business of such corporation, in, over or under the streets of such town or city. * * *

"Sec. 3. Every corporation which shall accept exclusive rights or franchises granted by ordinance or contract under the provisions of this chapter, shall make and render to the treasurer of the town or city granting the same, on or before the thirtieth day of January, April, July and October in every year, returns, verified by the oath of its president or treasurer, of the gross earnings of such corporation within such town or city for the period of three months next

preceding the first day of January, April, July and October in the same year, and shall at the same time pay to such town or city treasurer, in full payment for the rights and franchises aforesaid, a special tax upon said gross earnings at a rate not exceeding three per centum upon the gross earnings of said corporation within said town or city in such year. * * *"

On this state of the facts, the complainants argue that the acts of the town in proceeding to the construction of the waterworks amount to an impairment of the obligation of the contract of June 29, 1885, within the meaning of that portion of section 10 of article 1 of the constitution of the United States which provides that "no state shall * * * pass any * * * law impairing the obligation of contracts"; and consequently that the town, the town council, the town treasurer, and the committee charged with the construction of the works, all of whom are parties respondent, should be enjoined. In considering this question, it is to be observed, in the first place, that the validity of the contract made June 29, 1885, is not disputed. The only question here raised is whether the contract conferred on the Westerly Waterworks the exclusive right to use the highways for laying and maintaining water pipes. For the solution of this question, I am referred to the decision of the supreme court of Rhode Island as furnishing an interpretation of the state law governing the transaction. 35 Atl. 526. That decision was made in two suits in equity for injunction, the one brought by Orlando R. Smith and others, taxpayers of the town, against the town and the town officers, and the second brought by Louis W. Arnold and wife, taxpayers and owners of land abutting on one of the highways of Westerly, against certain town officers. Neither of the complainants here is a party to those bills. They were heard on demurrers, and the demurrers were sustained. The bill filed by Smith and others has since been amended, and the amended bill now awaits an answer. There are some circumstances in connection with the bill of Arnold and wife which suggest that the whole question there at issue may not have been presented to the court by the parties who were most clearly, if not exclusively, entitled to claim relief; but, in the view which I take of this matter, it is unnecessary to do more than refer to these circumstances, without grounding on them any conclusion.

Perusing, then, the opinion of that learned court for the purpose of ascertaining exactly what conclusions here pertinent were reached by them, it is at once evident that the questions raised by the pleadings, and there argued and decided, were—First, whether the waterworks has an exclusive right in the highways; and, secondly, whether the town has the right to construct waterworks, and whether that right was well exercised by the vote of April 11, 1895.

On the first question, the court say that the authority to grant an exclusive right must be found in Pub. Laws, c. 425, and conclude that no such authority is conferred by that chapter. The court also find that the town did not ratify the contract for exclusive right by the vote of April 11, 1895—First, because a vote recognizing the existence of the contract for some purposes cannot be held to be a ratification of the contract for all purposes; and, secondly and main-

ly, because it was not competent for the town to ratify a contract which it might not then make, and that the town, in its corporate capacity, had not such power, since the power to grant such franchises is conferred on the town councils. The court also finds that the town is not estopped from taking advantage of the incapacity of the town council to grant the exclusive right, and that the charter of the waterworks contains no ratification of the exclusive grant.

On the second question, the court holds that the town has power to construct waterworks, under Pub. Laws, c. 285, and that the power was well exercised by the vote of April 11, 1895. The complainants here argue that Pub. Laws, c. 285, authorizes "any contract," and therefore covers a contract for an exclusive franchise; that the grant is authorized by chapter 425; and that the acts of the town council subsequent to the passage of chapter 975 amount to a ratification of the contract; and that, if a grant is ratified, it must be held to be ratified as an entirety. I cannot agree with this argument. It is true that it does not explicitly appear in the decision of the supreme court that the force and effect of chapter 285 in this regard was there decided; but the court do say in terms that "the only authority to make' said contract [i. e. the contract for an exclusive right] on the part of the town council is conferred by Pub. Laws, c. 425." It is to be observed that there is strong authority for the proposition that general powers, such as are here granted, do not include the power to grant exclusive rights. So far as concerned the decision of the court as to the effect of chapter 425, the complainants urge that it is not a final decision, being only on demurrer; and they make other observations as to the attitude of the questions before that court, to which I have already sufficiently referred. But the fact remains that it is the latest utterance of that court, and is evidently well considered on the questions laid before the judges, and that the criticisms as to the method in which the case came up are not based on such entirely clear facts as to make it proper for me, especially on a motion for preliminary injunction, to give that decision less than its full apparent force. I hold it to be a conclusive adjudication on this question. The decision of the supreme court on the question of ratification is possibly not binding on this court as a pointed rule of decision, although I will not here enter into the elaborate discussion which would be necessary to settle that question. But a reading of chapter 975 shows that the contracts which town councils may make for exclusive franchises are on condition of payments to be made to the town on the amounts of earnings of the grantees. It seems to me clear that the town council had no power to ratify a grant of an exclusive franchise which did not contain such a condition. It is to be remembered that, if there was a ratification, it would operate only on this exclusive grant, since the validity of the contract in other respects is admitted, and, indeed, could hardly be disputed. I must conclude, therefore, for the purposes of this motion, that there is here no exclusive grant.

The final question thus recurs whether the vote of the town of April 11, 1895, and the subsequent votes and proceedings, do impair the obligation of the contract made June 29, 1885. There can be

no doubt that the effect of carrying out this vote will be greatly to depreciate the value of the waterworks and of the bonds issued by them, and that the town intends to proceed to construct its works, and to supply water to the inhabitants, regardless of these consequences. The Westerly Waterworks will remain under the obligations of the contract to supply water without charge for the town hall and for drinking fountains, to maintain a prescribed head of water, and, perhaps, to sell their works to the town at an appraised value. It seems reasonably clear that, if there be a contract here, the value of the contract, at least, will be materially impaired. The respondents urge that to grant the relief here prayed for, and to enjoin the construction of the waterworks, would be in effect to give the complainants the benefit of an exclusive franchise, to which benefit they are not entitled. This statement, however, is not entirely correct. If the complainants had an exclusive right, they could enjoin any other waterworks, even if they were unable to supply the persons to be accommodated by the proposed works, and even if there were no immediate ascertainable injury to themselves. This is the result, as it seems to me from all the cases on this question, provided, always, that the conduct of the owners of the franchise is not such as to forfeit their rights. On the other hand, to refuse relief here would be to permit the destruction of the whole contract. There must be some rights which are entitled to be protected under a contract admitted, and found to be valid.

The argument of the respondents divides itself into three points. They argue, first, that the building of waterworks by the town is not a violation of the contract, and that their vote to build does not impair the obligation of the contract, as might be the case if the town had passed a vote to authorize a third party to build the works. I do not find any authority for this position. The respondents cite Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, in which a grant to a private person was held to impair the obligation of a previous contract; but that case falls far short of holding that the act of the town, in building works for itself, would not so impair the obligation of the contract. The only case which has been cited which appears to be an authority on this point is Walla Walla Water Co. v. City of Walla Walla, 60 Fed. 957, which fully sustains the position of the complainants on this point so far as the scope of the decree is concerned. In that case the city was proceeding to build its own works, and was enjoined. The respondents point out that the case was not well considered on the point here in issue, because in that case it was admitted that, if the previous contract were valid, the case was within the jurisdiction of the court. This statement of the respondents is entitled to its full force; but it is to be observed that this is, to say the least of it, the only authority on the question, and that the federal courts, particularly of late years, have been jealous of any claim of jurisdiction in themselves, and have not been ready to take jurisdiction where there was evident doubt, although counsel at the bar, for whatever reason, might not be disposed to raise the question. But, looking behind the question of authority, I am very clear in my own mind that the decree was right. It is now

beyond dispute that acts of towns, when authorized by the state, are to be taken as acts of the state in the same way, for the present purpose, as they would be if they were statutes passed by the legislature.    That the vote of the town of Westerly of April 11, 1895, was authorized by the law of Rhode Island, is most clear, and has been conclusively found by the supreme court in the cases to which I have referred.    Being the act of the state, it seems to me that the question whether it be lawful must be determined, not by the form which it takes, nor by its character as an act in itself, but only by the effect on the pre-existing contract.    It seems to me to have an effect on that contract similar in nature to the effects which might be expected to flow from other actions of towns which have been interrupted by injunction.

The respondents, in the second place, make the point which they state as follows:

"The law under which the town is acting is a law passed prior to the alleged contract, and consequently cannot be held to impair the validity of such subsequent contract. Either it does not affect the contract at all, or, if it does affect the contract, the contract, being subsequent, must be held to have been made in view of the prior existing law, and so subject to it."

And to this they cite Water Co. v. Easton, 121 U. S. 388, 7 Sup. Ct. 916; Railroad Co. v. McClure, 10 Wall. 511; New Orleans Waterworks Co. v. Louisiana Sugar Refining Co., 125 U. S. 18, 8 Sup. Ct. 741.

I cannot see that these cases sustain the proposition of the respondents.    In the McClure Case the only question presented to the supreme court was whether the bonds in question were valid under the constitution of the state in which they were issued, and the court, holding that this was not a federal question, dismissed the writ of error for want of jurisdiction.    In the Easton Case a water company had set up in the state court an exclusive right to supply water to a borough, and sought to enjoin the borough from constructing works for the same purpose.    The supreme court of Pennsylvania, on appeal, decided that the right of the complainants was exclusive only against other private water companies, and that the laws by which the franchise was granted did not intend to prohibit boroughs from providing their inhabitants with water.    The supreme court, on writ of error, affirmed this judgment, on the ground that the decision of the court below was not reviewable. I understand the opinion to say that the question brought up for review was a question of the construction of a contract arising under a state statute, and hence is not reviewable in the federal jurisdiction.    The court pointed out, also, that, if the attitude of the case had been different,—that is to say, if that part of the statute law of the state in which the state court found a limitation of the general words of the grant under which the suit was brought had followed in point of time, instead of preceding, the state law under which the general grant of exclusive right was claimed,—then in that case it would have been necessary for the court to decide the construction of the contract on its own judgment, in order to the decision of a federal question which would have arisen in case a

certain construction should be adopted. In other words, the decision of a state court to the effect that the contract does not contain the single provision which is alleged to be infringed cannot be reviewed by the supreme court. I am unable to draw from this case, by way of inference, the proposition which is here set up, namely, that on this case, brought originally in this court, I must find that the contract made June 29, 1885, by the town of Westerly, under the state law then existing, contains, in effect, a reservation of the right to the town to construct other works, to the destruction of the property which should be invested on the faith of that contract. It is to be remembered that the cases in the Rhode Island court were brought by taxpayers and abutting owners, while here the water company and the creditors are the complainants. There is therefore a different case presented, as is well illustrated by comparing the cases above cited with Moore v. City of Walla Walla, 60 Fed. 961. In the case of New Orleans Waterworks Co. v. Louisiana Sugar Refining Co., the supreme court of Louisiana had decided that the contract was only for an exclusive right to sell water in a certain district; that it did not prohibit riparian proprietors from supplying themselves from the river; and that the respondent was entitled to and was acting under the last-named right. The supreme court held that this decision was not reviewable, and dismissed the writ of error for want of jurisdiction. It is worth while to refer here to the luminous exposition given in the opinion on the difference in the extent of jurisdiction on writ of error to the court of a state and on appeal from a federal court.

Turning, then, to the substantive question which, as it seems to me, must be here decided, the question is whether the contract here in dispute contains an implicit reservation, founded on the then-existing state of the law, of a right of a town, at pleasure, to construct waterworks. The law gives power to construct waterworks, and also to contract for a water supply, and, as incidental to such contract, to confer certain rights and exemptions on the contractors. Does this leave it competent for the town to make a contract with this corporation, and afterwards without any default alleged on the part of the corporation, and in derogation of the terms of the contract, to construct other works? The question is not whether the town may grant a franchise to be exclusively exercised by the company for a term of years, without regard to its ability or willingness to furnish an adequate supply of suitable water; but the question is, rather, whether the town has not, by its own act under one branch of the law, limited its power to act under the other branch of the act. Answering this question in the affirmative, I find that the town is making the attempt to exceed the limits so set; and the finding of the supreme court of Rhode Island is ground for a conclusive finding here that such attempt is in terms authorized by the state law,—that is to say, that the acts which I find to have this character are so authorized. The necessary conclusion on this point seems to me to be that this proceeding amounts to an act of the state impairing the obligation of a

contract. Hamilton Gaslight & Coke Co. v. Hamilton City, 146 U. S. 258, 13 Sup. Ct. 90.

The third ground of defense of the respondents is that the conduct of Westerly Waterworks has been such that they are not entitled to invoke the summary jurisdiction by injunction; and that the grant of an injunction will not work material advantage to the complainants, but will do great damage to the respondents. The first proposition has been suggested, although it is not strongly urged. I see no ground whatever for it in the evidence. The waterworks have furnished a supply of water sufficient in quantity, of good quality, and with an adequate pressure. They made an agreement with the committee of the Westerly Fire District for the furnishing of hydrants, on terms satisfactory to the committee, and at a rate of payment less, as the evidence shows, than the usual price for such service. The fire district, for some reason which does not appear, declined to confirm the agreement; and no hydrants have been in use, except a few which were maintained for a short time for purposes of experiment. The proofs show that the people of the town became dissatisfied with the service, but no reason is suggested why they should be dissatisfied, unless it be the failure to attach hydrants, for which failure it does not appear that the water company can be blamed. When the town, as appears, for the purpose of economy, proposed to buy the works, the company declined, as they had a right to do, to fix a price at which they would sell. Arbitrators were appointed by both parties. The arbitrators failed to agree on an appraisal mainly, as it appears, by reason of a difference of opinion as to the nature of the franchise held by the company. They also failed to agree on a third arbitrator, that member of the board who was chosen by the company insisting that the third arbitrator should be a lawyer, so that he might be capable of deciding the legal questions on which the arbitrators differed, while the arbitrator named by the town disagreed to this view. An attempt was then made by the parties to agree on a third arbitrator, and in these discussions it seems to me that the propositions made by the company do not indicate any indisposition to come to a fair agreement. On the whole, I can come to no conclusion except that the company has done its full duty under the contract; and that the town, without any ground of complaint, is intending to destroy the property which has been acquired, and the securities which have been purchased, in the confidence that the town would in good faith carry out its part of the agreement. The contracts for this purpose have been made since litigation was commenced on behalf of the taxpayers to enjoin this expenditure of public money, and after the electors were informed that the waterworks company were actively engaged in preparing to begin their present suit.

In this state of the case, the respondents cannot expect much weight will be given to their contention to the effect that the complainants will suffer little injury if these motions shall be dismissed, and they shall be remitted to their remedy on final hearing. Nor

can the respondents expect that large consideration will be given to any inconvenience which they themselves may suffer. If they had delayed the making of contracts until these motions could be decided, they would have escaped the risk of delay and damages arising from inability to perform them. It is stated that the insurance rates have been raised by reason of the absence of hydrants; but it appears that the increase in rates took effect several years ago, and that the failure to set hydrants is not, to say the least of it, due to any fault of the complainants. It is true, as is urged, that the court will be slow to enjoin works of public utility and necessity; but in this case the town is already well supplied with water, and there does not appear to be any public necessity to which valuable private interests should be subordinated. On the whole, the enterprise in which the town has embarked seems to me to be no less a project, without any plausible excuse, to confiscate the property of these complainants; and the argument of the town on these motions seems to me to be an attempt to show that this project can be carried to completion under the forms of the law. To such an argument I am not inclined to give any greater weight than that to which it is entitled, under pointed rules of law and pointed rules of decision. The injunction will issue in both cases.