BROWN, District Judge.
Although these cases are before the court upon motions to dissolve the temporary injunctions, yet as the merits have been exhaustively argued, and as counsel for all parties have requested our decision upon the main questions which determine the substantial rights, we accede to such request and decide the motions accordingly.
The first inquiry is, has the corporation known as the “Westerly Waterworks” any rights which are impaired or threatened by the vote of the town of Westerly in town meeting, on April 11, 1895, directing the town council to contract for and construct waterworks for the town? Or, to state the inquiry in another form, *612 does the town’s action impair any obligation of contract to the benefit whereof said waterworks company is entitled?
The company bases its claim of right to preclude the town from constructing waterworks—First, upon a vote of the town council dated June 29, 1885; second, upon acts of the town which are claimed to have the effect of an adoption and ratification of the act of the town council.
In determining what rights were derived from the town council, we have first to find what rights the town council had power to bestow. The authority of the town council is purely statutory, and the effectiveness of its grants and contracts is to be measured by its powers. Whatever may be the language which the members of the town council employ in their votes, however liberal may be their expressions in conferring rights and privileges, only such language can influence our decision as conforms to powers conferred by law. The sole powers possessed by the town council, under which the company can derive the right which it claims, are set forth in Pub. Laws R. I. c. 425:
“Sec. 32. The town council of any town, or the city council of any city, may grant to any person or corporation the right to lay water pipes in any of the public highways of such town or city for the supplying the inhabitants of such town or city with water, and may consent to the ereotion, construction, and the right to maintain a reservoir or reservoirs within said town or city, for such time and upon such terms and conditions as they may deem proper, including therein the power and authority to exempt such pipes and reservoirs, and the lands and works connected therewith, from taxation.”
The meaning of this law has been expounded by the supreme court of the state of Rhode Island in the case of Smith v. Town of Westerly 19 R. I. 33, 35 Atl. 526; and although this decision may not be abso lutely binding upon this court, since the rights of the company accrued prior to the decision, and since it was upon a controversy be tween different parties, and because it is not a final decision, being only on demurrer, yet as the latest utterance of that learned court, and as a thorough discussion and learned exposition of principles sup porting the conclusion of the court, we regard it as of the greatest weight, as did the district judge sitting in this court. See Westerly Waterworks v. Town of Westerly, 75 Fed. 181. Upon the reasoning of the state decision, and the authorities therein cited, as well as upon our independent investigation, we arrive at the same conclusion as was reached by that court, and, following the prior view of this court, find that under chapter 425 the town council had no power to grant to the Westerly Waterworks exclusive rights.
As in the arguments and briefs there has been a somewhat indiscriminate use of the terms “town” and “town council,” and as certain propositions have been enunciated concerning the town which are true only of the town council, and concerning the town council which are true only of the town, it will clear the further discussion of the case to point out that the town and town council are distinct bodies with distinct powers. The reasons for distinguishing between acts of the town and of the town council are substantial, and the differences between the two bodies are not nominal, nor are arguments based upon such differences fairly subject to the criticism that they involve only technical matters of mere form. On the contrary, they *613 involve important questions of public right. As is said by Mr. Dillon in his book upon Municipal Corporations (4th Ed. § 28):
“In the New England town proper the citizens administer the general affairs in person at the stated corporate town meetings, and through officers elected by themselves. * * * The New England town is especially interesting as affording, perhaps, an example of as pure a democracy as anywhere exists. All of the qualified inhabitants meet and act directly upon and manage, or direct the management of, their own local concerns. Each citizen has a vote and an equal voice. This form of government was adopted at a very early period, and is firmly adhered to and deeply cherished by the people of the New England states. * * *”
The principle of direct participation by the inhabitants, in matters involving important expenditures of money and public improvements, has been constantly recognized in the state of Rhode Island. In the language of the statutes (Gen. Laws, c. 36, § 1): “The inhabitants of every town shall continue to be a body corporate,” etc. In the case of Smart v. Town of Johnston, 17 R. I. 778, 24 Atl. 830, it was said of the powers of town councils in establishing highways, what might also have been said in relation to the granting of the privilege of laying water pipes in the highways, and of constructing and maintaining reservoirs:
“Town councils are not the agents nor the servants of the various towns which they represent, in the ordinary and legal meaning of that term, in the laying out of highways, but they are public officials forming an important part of the government, and clothed with certain well-defined powers, and charged with certain well-defined duties, by the statute law of the state.”
The power conferred by chapter 425, Pub. Laws R. I., using the language of the court in the above case, “is conferred exclusively upon the town council, and over their action in the matter the town has no control, and cannot be held responsible, at any rate, for their unauthorized acts.” To permit the town council, without previous authority, to act for the town in matters vested only in the town, is to deprive the town inhabitants of their right as corporators to regulate the affairs of the town in the corporate meeting. By electing persons as members of a town council, the inhabitants express their views of their qualifications to act in matters limited by statute. The scope of their duties is important in determining the qualifications of candidates for election. To permit persons chosen for certain duties to bind the town in matters not contemplated by the inhabitants as within the powers of the officers is in principle and practice dangerous.
The rights of the public, the rights of the town, are to be scrupulously regarded; and, though franchises to corporations are to be carefully protected, the source of such privileges must be traced either to the direct act of the legislature, or to the authorized act of the agent acting clearly within the powers delegated by the legislature in express terms. Grants of exclusive rights such as the town council attempted to confer must rest upon the clearest language and upon the most definite authority, and persons dealing with public servants are strictly and justly held to the obligation to inform themselves as to the rights which they may acquire in so doing. All persons contracting -with a municipal corporation must at their peril inquire into *614 the power of the corporation or of its officers to make the contract. Dill. Mun. Corp. (4th Ed.) § 447; Farnsworth v. Pawtucket, 13 R. I. 85-88.
This rule is for the public protection, and there can be no case wherein it should be more strictly applied than one involving the grant of an exclusive franchise. Employing the language of the argument of the learned counsel for the Seamen’s Friend Society:
“The reason why a municipal body cannot make a valid grant of an exclusive franchise of that kind is because it ties the hands of the public in making internal improvements When that time arrives when, in the discretion of the public, an internal improvement should be made,—because it ties the hands of the public in its legislative powers.”
So far as the acts of the town council are concerned, therefore, we can attach no force to the contention of the complainants that they have been misled, and have made a large investment upon the faith of the acts of the town, and that it is unjust and inequitable, and in the eye of the law a hardship, that they should be deprived of their supposed exclusive rights. It is neither unjust nor inequitable that their rights should be determined by legal principles established in favor of the public.
As it is assumed in the opinion of the learned district judge granting the temporary injunctions that a valid contract exists, even, if an exclusive right has not been granted; as this is assumed by counsel for the waterworks and for the Seamen’s Friend Society; and as the origin and exact nature of that contract are somewhat obscure, after the concession that exclusive rights were not conferred upon the company,—it becomes necessary to dwell upon this point. Our primary inquiry is rather as to what rights the company has than as to whether they arise from a “contract,” using the term in the sense of an agreement between competent parties, or from the so-called “contract” arising between the legislature and the company from the direct or indirect grant of a franchise. We therefore ask what rights accrued to the company, and what obligations were imposed upon the town, either by contract or by grant, immediately upon the passage by the town council of the vote of June 29, 1885, and the acceptance by the company of the conditions of this grant, and before any act of the town in its corporate capacity? The company acquired a right to the use of the highways and public grounds to be enjoyed as long as the inhabitants shall be reasonably supplied with water by the company, and a right to exemption from taxation for 25 years. It incurred an obligation to supply water to the town and to the inhabitants, and an obligation to sell its waterworks to the town. The obligations were imposed upon the town to permit the use of the streets and to exempt the company from taxation. The town also acquired a right to buy the property of the company, and to insist upoD the furnishing of a proper water supply. The suggestion that because the town council imposed a duty upon the company to supply water, as a condition of the privilege of laying its pipes, etc., it also imposed a duty upon the town to take water only from the company, is not supported by an examination of the language of the resolution, and the force of such a suggestion is destroyed by our finding that the council *615 could not confer exclusive rights. These rights of the company were subject to whatever competition might be authorized by the state, town council, or town, including the competition of the town itself,. and it should be carefully observed that the rights of the town were lawfully acquired, not through its own act, but through the act of the town council as agent of the legislature and not as agent of the town. It is manifest that upon the state of rights and obligations-then existing there was no legal obstacle to prevent the town from instituting waterworks of its own. The company was under the obligation to sell its works to the town; but, as was conceded upon the brief of the Seamen’s Friend Society, and as must be decided upon an examination of the resolution, limited by the force of law from a grant of exclusive rights to a grant of rights not exclusive, the town was under no obligation to purchase the works of the company. It merely had an option to do so. The town was free to refuse to buy and free to compete, although its competition might be disastrous to the company.
Although the company is bound to furnish water for the town hall and drinking fountains, the town, under any view, whether the grant was exclusive or not, is not bound to receive it. The town is under-no obligation to pay for it, and therefore does no wrong to the company in supplying itself with water for these purposes, since it rather relieves the company of a burden than deprives it of a right. The inhabitants of the town are free to use the company’s water or not. The public is entitled to the full benefit of competition. It may take its water from any other source or from any other company, or supply itself by its own works. It should be borne in mind that we are still discussing the question as to the rights derived from the town council. From our prior conclusion that the council could not confer exclusive rights, it of course follows, that it could not exclude the inhabitants of the town or the town itself. It does not obviate the objection to the exclusiveness of the grant to show simply that the company cannot-lawfully exclude every person or corporation while conceding that the town is excluded. The full force of our finding that the town council has no power to make an exclusive grant must be accepted, and this finding means that the town council can exclude no person or corporation upon whom the legislature, or the present or future town council as agent of the legislature, may confer like rights. FTor can the town council by its grant or contract exclude the town from exercising its rights. In favor of whom exists the principle that towns or town councils, unless expressly authorized by the legislature, cannot confer exclusive privileges? In favor of the public, in favor of the inhabitants of the town; and the chief beneficiary of the legal rule cannot be held to be excepted from it without rendering the rule an absurdity in terms and in substance. Failing to find in the act of the council, unaccompanied by any acts of the town in its corporate capacity, a sufficient basis for the injunctions, and finding that up to this point the complainants’ case is without substantial foundation), we approach the second branch of the case.
Our second inquiry is, has the town itself conferred upon the company a right to exclude the town from competition? This in *616 quiry presents two important questions: First. Has the town the power to exclude itself? Second. If it has such power, has the power been exercised?
Chapter 285 of the Public Laws of Rhode Island is the only statute which, in our opinion, is entitled to serious consideration upon the question of the power of the town. Chapter 975, passed May 29, 1891, 5 years and 11 months after the resolution of June 29, 1885, was not in the contemplation of the parties, and there was at no time an acceptance by the company of rights or franchises under that statute, or a submission to the conditions thereof. The learned district judge also adopted this view of the statute. Though we have considered this statute carefully, we call it up at this point merely to dismiss it as having no weight. The material portions .of chapter 285 are as follows:
“Section 1. Whenever the electors of any town, qualified to vote upon questions of taxation or involving the expenditure- of money, shall have voted, at a town meeting called for that purpose, to provide a water supply for the inhabitants of such town, or for some part thereof; or whenever any town shall enter or shall have entered into any contract with any person or corporation to furnish such town with such a water supply (a contract which towns are hereby authorized to make) then such town, or the person or corporation bound to fulfill such contract, as the case may be, may take, condemn,. hold, use and permanently appropriate any land, water, rights of water and of way necessary and proper to be used in furnishing or enlarging any such water supply, including sites and materials for dams, reservoirs, pumping stations, and for coal houses, with right of way thereto, and right of way for water pipes along and across public highways and through private lands, and including also lands covered or to be flowed by water, or to be in any other way used in furnishing, enlarging or maintaining any such water supply. And if any change in any highway shall be required for the accommodation of such water supply, then such town, person or corporation may alter the grade of such highway or construct a bridge therein, under direction of the town council of the town where such change is made, and as far as may be needful, first giving bond with surety satisfactory to a justice of the supreme court, if requested, conditioned to reimburse such town for every expense and damage occasioned by such change of grade or other change in such highway.”
An important difference exists between this statute (chapter 285) and chapter 425, previously considered. The town is authorized by this statute to contract with any person or corporation for a water supply “for the inhabitants of such town, or for some part thereof.” This is obviously a different power from that of the town council, under chapter 425, to grant permission to lay pipes and to vend water subject to indefinite competition. There is a serious question whether the prohibition of exclusive grants does not attach to this statute as well as to chapter 425. In reference to the decision of the supreme court of Rhode Island in Smith v. Town of Westerly, 19 R. I. 33, 35 Atl. 526, the learned district judge in his decision in this court says:
“The complainants bere argue that Pub. Laws, c. 285, authorize ‘any contract,’ and therefore cover a contract for an exclusive franchise; that the grant is authorized by chapter 425, and that the acts of the town council, subsequent to the passage of chapter 9.75, amount to a ratification of the contract; and that, if a grant is ratified, it must be held to be ratified as an entirety. I cannot agree with this argument. It is true that it does not explicitly appear in the decision of the supreme court that the force and effect of chapter 285, in *617 •this regard was there decided; but the court do say, in terms, ‘that the only authority to make said contract [i. e. the contract for an exclusive right] on the part of the town council is conferred by Pub. Laws, c. 425.’ It is to be observed, also, that there is strong authority for the proposition, that general jiowers such ■as are here granted do not include the power to grant exclusive rights.”
Although such doubt exists, we think there is great force and weight of reason in the contention of the plaintiffs that chapter .285 does confer upon the town the power to make a binding agreement with the company for a full supply of water for the town and its inhabitants, and, as a part of such contract, to give to the company, as reasonable security for compensation for its original outlay, an agreement that the town will not, during the period of 25 years, compete with the company so long as it furnishes a proper and adequate supply of water of a suitable quality, where such .an agreement is accompanied by an agreement upon the part of the company that it will sell to the town its property at a fair price, to be fixed by arbitration. The reasonableness of such a contract might, however, be questioned if the town were called upon to pay a sum to compensate the company for a loss of an •exclusive franchise in addition to the value of its works. To bind the town to pay the company the value of an exclusive franchise might be said to amount to conferring an exclusive franchise. By retaining the right to recall the powers granted to the company upon repayment to it of the amount of its investment, the objection that the hands of the public are tied, and that its discretionary powers as to making further improvements are impaired, is obviated, at least to a great extent. The contract, then, cannot, in strictness, be called an exclusive contract, since the exclusiveness is only upon a reasonable condition. We think, therefore, that a sound distinction can be made between a grant or a contract which absolutely excludes all competition, and one which merely excludes the competition of the town until it shall make due compensation to the company. And there is authority for such a distinction in the cases cited for the complainants. Walla Walla Water Co. v. City of Walla Walla, 60 Fed. 957; Fergus Falls Water Co. v. Fergus Falls, 65 Fed. 586; Illinois Trust & Savings Bank v. City of Arkansas City, 22 C. C. A. 171, 76 Fed. 271.
It appears, however, upon examination of the case of Walla Walla Co. v. City of Walla Walla, 60 Fed. 957, that the city in explicit terms agreed not to erect, maintain, or become interested in any other waterworks, save under conditions not material to this decision, and it is also stated that the city had bound itself to take over the plant and render just compensation whenever it did elect to furnish water by means of works owned by it. In the present case there is no express agreement .that the town will not compete, nor that in case it should elect to compete it will purchase the works. Such agreement must be deduced from construction, and, in view of the rule that all doubt in the construction must be resolved against the company and in favor of the public, there is great difficulty in inferring such agreement. If the grant of an exclusive franchise is unlawful, the natural course would be to *618 reject the word “exclusive” entirely, whereupon the language would confer merely such rights as might have been granted by the town council, i. e. rights not exclusive. Even then we encounter the doubt suggested by the decision of the supreme court of Rhode Island whether the town had any authority to make such a contract or to confer any privileges in the highways, since such power is vested in the town council, and, by force of the maxim, “Ex-pressio unius est exclusio alterius,” withheld from the town. If the word “exclusive” be entirely stricken out, the only support for complainants’ right to preclude the town is the argument that, because the town agreed'that the company might be permitted to supply water, therefore the town agreed to accept it, and not to take it elsewhere or supply itself. But this argument leads to such a conclusion that we must reject it. The company is bound, if bound at all, to supply water, not for 25 years, but to supply it “at all times,” and this would lead us to a perpetual contract, and a perpetual contract would not be within the class of contracts which upon any theory the town is authorized to make. It is only by retaining the word “exclusive” that we can find an intention of the town to preclude itself from competition; that is to say, upon the theory of the argument of the complainants, the town had no power to grant exclusive rights, and so far as unlawful such language must be rejected, but so far as lawful it may be retained. The contract for exclusive rights necessarily covers the exclusion of the town. The town had a right to contract not to compete for a reasonable time, and an intention so to contract is a necessary implication, from the use of the word “exclusive.” In other words, we must reject the word “exclusive” as a word of grant, and retain it as a word of contract, but limiting its application to the town, though it was used as applicable to the town and to all others. Then from the fact that the town, according to this construction, has agreed not to compete, we infer an agreement imposing upon it the obligation to buy the company’s works if it does compete.
Admitting the existence of a contract, we have grave doubts whether complainants can support their claims by the terms of that contract or by any fair or reasonable construction of its language. Without, however, deciding the proper construction to be placed on the contract when the exact limits of the legal powers of the town under chapter 285 are determined, and without finally deciding the question of power in the town to agree to preclude itself from competition, we will for our present purposes assume the existence of such power as a necessary basis for an examination of the question: Has the power in fact been exercised by the town itself? Has the town adopted or ratified the action of the council by corporate action in town meeting, or otherwise, or by acquiescence?
As we have previously said, the claim of the complainant company that upon the faith of the town’s action it has made a large investment cannot be substantiated by the admitted facts of the case. The investment was made upon the faith of the action of the town council, and we cannot, without a violation of im *619 portant legal principles, and without establishing a dangerous precedent, overlook this fundamental distinction. When we are dealing with questions of franchises or contracts wholly or partly exclusive of public rights, we must adhere to the requirement of clear and express legislative authority. To base such exclusive rights upon a grant or contract of a body without authority, and then to ratify or confirm such srrant or contract by the mere silence of the public, or by uncertain and ambiguous expressions, or by acts which may be interpreted either as acquiescence or as mere sufferance, is to establish a new source of grants in derogation of public right. If the written laws promulgated by the legislature, and expressed in definite terms, are to be construed strictly in favor of the public; if, to use the language of Mr. Justice Brewer in Jackson Co. Horse R. Co. v. Interstate Rapid-Transit Ry. Co., 24 Fed. 306, “doubts as to what is granted are resolved in favor of the grantor, or, as often epigrammatically said, a doubt destroys a grant,”-—then it must also be true that the same principles are to be applied when we come to interpret the significance of the words, of the acts, and even of the mere silence, of the town.
But, foregoing for the moment the strict application of these principles, let us consider the conduct of the town, and interpret it as we would interpret an act of ordinary business life. There is, first, silence for more than five years. So far as appears of record, from June 29, 1885, to December 1, 1890, no action was taken by a town meeting based upon the existence of said contract, and not until June 2, 1891, did the town vote to take action relative to the purchase of the plant. There was no action by the water company or by the town which developed a controversy as to -whether or not the company had an exclusive right, or a right exclusive to the extent of precluding the town. The company proceeded in the exercise of its undoubted and undisputed rights to erect its plant, which was completed in November, 1886. If by silence the town recognized anything, it was the mere right of the complainant waterworks company to do what it was doing, and that it was proceeding under a privilege conferred upon it by the town council under direct legislative authority, over which the town had no control. Smart v. Town of Johnston, 17 R. I. 778, 24 Atl. 830, ubi supra.
Nor is there in the use of water by the town'for its town hall and drinking fountains any satisfactory or unambiguous evidence of the town’s intent to adopt or make a contract under chapter 285. The furnishing of a certain quantity of water for public use was required by the town council as a condition of the grant of the use of the public highways, etc., and, by accepting the benefit of a reasonable condition imposed under chapter 425, the town cannot be said to have acted under chapter 285. The silence of the town, therefore, cannot be held to amount to an adoption or ratification of the act of the town council. We must look, therefore, to the votes of the town.
The first vote, passed June 2, 1891, is as follows:
*620 “Resolved, that the town eonncil be, and they are hereby, instructed to notify -the Westerly Waterworks Company in writing that the town desires to purchase the property of the Westerly Waterworks Company, and they are further instructed to take all necessary action in accordance with the provisions ■of the franchise of the said Westerly Waterworks Company, to ascertain at what price the Westerly Waterworks can be purchased.”
The second vote, passed April 11, 1895, is as follows:
“Resolved, that the town council of the town of Westerly he, and it is hereby, requested to agree, if possible, with the Westerly Waterworks, of said town, upon a third referee, under the agreement between said town and said Westerly Waterworks, and, in case no such agreement can be arrived at within thirty ■days from the date of this meeting, the said town council is hereby directed to .contract for and construct waterworks for said town, not to exceed in cost the ■sum of one hundred and fifty thousand dollars ($150,000).”
Counsel for complainants urge that, by claiming the benefit of the so-called contract which the town council made for its benefit, the town adopts the contract as its own. This point was before -the supreme court of Rhode Island in the Smith-Westerly suit, and -decided adversely to complainants’ contention in the following language:
“Doubtless this vote may properly he said to have amounted to the recognition of the existence of the contract in question, in so far, at any rate, as it ■confers upon the town the right to purchase the waterworks which had been •constructed by virtue thereof. But, even assuming that it was a recognition ■of the contract in its entirety, still it does not amount to an adoption or ratifi-eation thereof by the town.”
We adopt the view of the supreme court of Rhode Island as to the effect of these resolutions. In fact, there is some degree of force in the claim of counsel for the defendant that the second vote of the town meeting was rather an express denial of the company’s right to prevent the town from building waterworks than .an adoption of a previous contract which prohibited it to do so. The presumption is rather that the town recognized the existing .state of legal rights of the company than that it conferred upon the company new rights. The votes looking to the purchase of the waterworks property are said by the counsel for complainants to be a claim of the chief benefit of the contract, and therefore .an adoption of it. But this was a benefit to which it had a right ■both by the terms of the company’s charter and by the inbra vires act of the town council. It was a right which it derived from the legislature directly through the charter of the company, and indirectly through the town council. It existed independently of .any action of the town. The resolution of June 2, 1891, instructs the town council “to take all necessary action in accordance with the provisions of the franchise of said Westerly Waterworks Company to ascertain at what price the Westerly Waterworks can be purchased.” The action of April 11, 1895, refers to the agreement between said town and the company, but looks merely to the fixing of a price. These resolutions are quite as consistent with the •desire to buy off a mere claimant, and to end a dispute, as with .a recognition of the rights claimed, and the language is altogether too uncertain in its import and in its reference to amount *621 to a concession to the company of important rights which it did-not in fact then possess.
This attempt to have a price fixed at which the town might buy or not buy, as it chose, is not, in our opinion, equivalent to the-adoption or ratification of any contract, and effected no change in the status of the company’s rights. We have carefully examined the numerous cases cited by complainant to the point of ratification,, and find that each of them involves facts very different from those here presented. The subjects of ratifying a contract, of confirming doubtful rights, of precluding the town from its then existing' rights, are in no wise involved in the purposes of the town meetings nor in their acts. The warning of the town meeting of April 11th clearly shows this. The rule applicable to ratification by a town of unauthorized acts is clearly stated in the opinion of Mr. Justice Gray in Town of Bloomfield v. Charter Oak Bank, 121 U. S. 121, 135, 137, 7 Sup. Ct. 865, 872, 873:
“Any ratification of an act previously unauthorized must, in order to bind the principal, be with full knowledge of all the material facts. Owings v. Hull, 9 Pet. 607; Bennecke v. Insurance Co., 105 U. S. 355. And no estoppel in pais can be created, except by conduct which the person setting up the estoppel has the right to rely upon, and does in fact rely and act upon. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10; Scovill v. Thayer, 105 U. S. 143; Brant v. Iron Co., 93 U. S. 326.” “The vote of those who attend a town meeting being of no validity against the town or its inhabitants, unless the object of the vote is set forth in the notice or warning of the meeting, the town can no more ratify an act afterwards than authorize it beforehand, except by vote passed pursuant to a previous notice specifying the object. Without the-indispensable prerequisite of such a notice, those present at a town meeting have no greater power to bind the town indirectly or by estoppel than they have to bind it directly by an original vote. Marsh v. Fulton Co., 10 Wall. 676; Daviess Co. v. Dickinson, 117 D. S. 657, 6 Sup. Ct. 897; Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121; Pratt v. Swanton, 15 Vt. 147; Lander v.. School Dist., 33 Me. 239; American Tube Works v. Boston Mach. Co., 139 Mass. 5, 29 N. E. 63. * * * Upon the whole case there was no proof of original authority, or of subsequent ratification, or estoppel, to bind the defendant town, —none of original authority, for want of any vote passed pursuant to due notice-in the warning; none of ratification, for the 'same reason, as well as because-it was not shown that the acts proved were done with intent to ratify the acts of the treasurer in issuing the notes sued on, or with knowledge of all the material facts attending their issue; none of estoppel, because there was no evidence of any acts of the town, which plaintiff had a legal right to rely upon,, or did in fact rely upon, in taking these notes.”
Furthermore, as, in our view, the whole basis of complainants’' case is reduced to these resolutions, and to a doubtful construction of their intent and significance; and as upon this construction they seek to establish a contract doubtful in its terms, and, upon their contention, in derogation of public right,—we should feel compelled, even if we were not fully satisfied of the right of the town to construct its works, to solve that doubt in favor of the town by the application of the rule, thoroughly established by decisions of the supreme court of the United States, that doubt must be-solved in favor of the public:
“By a familiar rule, every public grant of property, or of privileges or franchises, if ambiguous, is to be construed against the grantee and in favor of the-public, because an intention, on the part of the government, to grant to- *622 private persons, or to a particular corporation, property or rights in which the whole public is interested, cannot be presumed, unless unequivocally expressed or necessarily to be implied in the terms of the grant, and because the grant is supposed to be made at the solicitation of the grantee, and to be drawn up by him or by his agents, and therefore the words used are to be treated as those of the grantee; and this rule of construction is a wholesome safeguard of the interests of the public against any attempt of the grantee, by the insertion of ambiguous language, to take what could not be obtained in clear and express terms. Charles River Bridge v. Warren Bridge, 11 Pet. 420, 544-548; Dubuque & P. R. R. v. Litchfield, 23 How. 66, 88, 89; Slidell v. Grandjean, 111 U. S. 412, 437, 438, 4 Sup. Ct. 475.” Central Transp. Co. v. Pullman’s Palace-Car Co., 139 U. S. 24, 49, 11 Sup. Ct. 478, 484.
But in the present case we think that there are no reasonable grounds for doubt. The company’s rights are derived only from the town council, and the company has only such rights as the town council could confer.
As we find that the waterworks corporation had no rights which would be impaired by the building of town waterworks, it becomes immaterial to decide the point made by the defendant that the vote of the town council passed April 11, 1895, was not a “law,” within the meaning of the constitutional inhibition of state laws impairing the obligation of contracts, though we find strong support for the complainants’ contention in the authorities cited upon their briefs. To the claim of the complainants that the charter of the company recognizes and validates its exclusive privilege, we are unable, upon examination of the charter, to give any weight. We agree with and adopt the language of the state court in the Smith-Westerly Case upon this point: “An examination of said charter, however, fails to show any ratification or adoption of said contract, or any reference thereto.” What have been termed the “equities” of this case have been presented to us by counsel for the complainants, and the hardship to the company and to the stockholders which will result from a denial of their claims has been urged as a matter relevant to a determination of the legal rights. While we may regard with sympathy the failure of enterprises to meet the expectations of their promoters, we cannot permit such sympathy to cause us to depart from rules of law which impose limitations upon the powers of public officials and municipal corporations. Recognizing the limitations imposed upon corporations and individuals by the national and state constitutions, and by the laws which the people enact through their representatives in the national and state legislatures, it is the duty of the federal courts to support the state courts by a full recognition of their right and duty to maintain in their respective jurisdictions the rights of the public against claims in derogation thereof based upon an uncertain and doubtful construction of acts of the legislature or of agents or officers acting under powers delegated to them by the legislature. In the case of Hamilton GrasLight & Coke Co. v. Hamilton City, 146 U. S. 258, 13 Sup. Ct. 90, it was strongly argued by counsel, as it has been urged in this case, that not competition, but confiscation, was sought (see pages 263, 264), but the court met such suggestions in the following language: ■
*623 “The statutes in force when the plaintiff became a corporation did not compel the city to use the gaslight furnished by the plaintiff. The city was empowered to contract with the company for lighting streets, lanes, squares, and public places within its limits, but it was under no legal obligation to make a contract of that character, although it could regulate, by ordinance, the price to be charged for gaslight supplied by the plaintiff and used by the city or its inhabitants. It may be that the stockholders of the plaintiff supposed, at the time it became incorporated, and when they made their original investment, that the city would never do what evidently is contemplated by the ordinance of 1889. And it may be that the erection and maintenance of gas works by the city at the public expense, and in competition with the plaintiff, will ultimately impair, if not destroy, the value of the plaintiff’s works for the purposes for which they were established. But such considerations cannot control the determination of the legal rights of the parties. As said by this court in Curtis v. Whitney, 13 Wall. 68, 70: ‘Nor does every statute which affects the value of a contract impair its obligation. It is one of the contingencies to which parties look now in making a large class of contracts, that they may be affected in many ways by state and national legislation.’ If parties wish to guard against contingencies of that kind, they must do so by such clear and explicit language as will take their contracts out of the established rule that public grants, susceptible of two constructions, must receive the one most favorable to the public.”
The court, also, citing the language of Turnpike Co. v. State, 3 Wall. 210, says:
“No exclusive privileges had been conferred upon it, either in express terms or by necessary implication; and hence whatever may have been the general injurious effects and consequences to the company, from the construction and operation of the rival road, they are simply misfortunes which may excite our sympathies, but are not the subject of legal redress.”
Our conclusion is fortified by the decision of the supreme court of Ehode Island upon the vital questions existing in the present cases. Giving full weight to the arguments presented by the complainants concerning the status of that case, as a controversy, prearranged to secure a decision for ulterior purposes, we are yet of the opinion that the views of the learned court upon the main questions are free from any influence resulting from that aspect of the case, and are sound interpretations of statute law. Though we reach our conclusion by a somewhat different path, and upon our independent judgment, assisted, though not controlled, by that learned court, yet we fully concur in the findings of law which have led them, a.s ourselves, to find that the defendant has a complete right to proceed to the construction of waterworks; and we find that in so doing it will impair no right nor obligation of contract to the benefit whereof the complainants are entitled. The preliminary injunctions, therefore, will be dissolved.
NOTE. For previous decision in this case, see Westerly Waterworks v. Town of Westerly, 75 Fed. 181.